# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN - 3 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| F STREET INVESTMENTS, INC., A TEXAS CORPORATION F/K/A HYGEIA DAIRY COMPANY | § § § § |
| Plaintiff, | § § |
| vs. | § § |
| SOUTHERN FOODS GROUP, L.P. AND SUIZA FOODS CORPORATION | § § § |
| Defendants. | § |

B - 02 - 001

CIVIL ACTION NO. _____

## DEFENDANTS' JOINT NOTICE OF REMOVAL

Defendants Southern Foods Group, L.P. and Suiza Foods Corporation (now Dean Foods Company) file this notice of removal under 28 U.S.C. § 1446(a). Pursuant to 28 U.S.C. §1441, defendants give notice that Cause No. 2001-11-5052-G, F Street Investments, Inc., a Texas Corporation F/K/A Hygeia Dairy Company v. Southern Foods Group, L.P. and Suiza Foods Corporation, is hereby removed to the United States District Court for the Southern District of Texas from the District Court of Cameron County, 404th Judicial District, where said case was originally filed and is currently pending. A copy of all process, pleadings and orders served upon defendants therein is filed simultaneously herewith. An index of the matters being filed is attached hereto.

## GROUNDS FOR REMOVAL

### Substantive Bases

1.      Defendants base this Notice of Removal on 28 U.S.C § 1441(b), which

__DEFENDANTS' JOINT NOTICE OF REMOVAL__ - Page 1

721570 1/SP2/75935/0208/12272001

provides that any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Original jurisdiction in this case exits by reason of  28 U.S.C.  § 1331.

2.      Defendants are a partnership and a corporation that are engaged in the business of producing and distributing dairy products. Defendant Southern Foods Group L.P. acquired most of the operating assets of plaintiff in November 1999. Defendant Suiza Foods Corporation later acquired the assets of defendant Southern Foods Group L.P., including those previously acquired from the plaintiff.

3.      Plaintiff is F Street Investments, Inc., a Texas Corporation F/K/A Hygeia Dairy Company that was engaged in the business of producing and distributing dairy products in Texas. Plaintiffs sold their assets to defendant Southern Foods Group L.P. and now allege various complaints related to defendants purported conduct both before and after the sale. Plaintiff contends that defendants violated the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* Specifically, plaintiff alleges that defendant(s) "Southern knowingly and intentionally engaged in predatory pricing in direct violation of  the Sherman Antitrust Act  and Suiza was the knowing and intentional beneficiary of such acts." (Plaintiff's Original  Petition, ¶ 22).

4.      Plaintiff further alleges a violation of the Texas Antitrust Act, Tex. Bus. & Comm. Code §15.05. Specifically, plaintiff alleges that defendant(s) "Southern knowingly and intentionally engaged in predatory pricing in direct violation of  the Texas Antitrust Act

and Suiza was the knowing and intentional beneficiary of such acts." (Plaintiff's Original Petition, ¶ 25).

5.    Plaintiff further alleges breach of contract against the defendants based on various purported conduct by the defendants. Plaintiff asserts the defendants have failed to release escrowed sums when due, failed to collect wholesale accounts receivable on behalf of plaintiff on a commercially-reasonable basis, and failed to repay expenses for a Christmas party.

6.    Plaintiff further alleges conversion against the defendants for failing to pay over accounts receivable, preventing the disbursement of escrowed funds to plaintiff, and by refusing to return plaintiff's ice cream dollies. Plaintiff also asserts causes of action for recovery of attorneys' fees and exemplary damages.

7.    The original petition brings a specific cause of action for a violation of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*. (Plaintiff's Original Petition, ¶ 22). The original petition seeks treble damages pursuant to the Sherman Antitrust Act 15 U.S.C. § 15. (Plaintiff's Original Petition, ¶ 24). Thus, a federal question is presented on the face of plaintiff's complaint as this cause of action will require the resolution of substantive issues of federal law. A federal question provides a proper basis for removal.

8.    The Sherman Act claim presented in this case and described in paragraphs 22, 23, and 24 of the Plaintiff's Original Petition is separate and independent from the other claims presented in this case, but has been joined with other claims. As such, the entire case is properly removable to this Court pursuant to 28 U.S.C. § 1441(c).

**DEFENDANTS' JOINT NOTICE OF REMOVAL** - **Page 3**

## Procedural Bases

9.     The procedural requirements of 28 U.S.C. § 1446(b) have been met.  This Notice of Removal is timely under 28 U.S.C. § 1446(b), having been filed within 30 days of the date on which defendants received a copy of the complaint in this matter through service or otherwise, which was December 7, 2001.  All defendants join in this removal.

10.     Venue is proper in this district under 28 U.S.C. § 1441(a) because this district and division embrace the place where the removed action has been pending. Written notice of this Notice of Removal is being provided to plaintiff by service of this document on their counsel of record, and written notice is contemporaneously being filed with the clerk of the District Court of Cameron County, 404th Judicial District.  Plaintiff did demand a jury trial in the state court action.

11.     By filing this Notice of Removal, defendants do not waive, and fully reserve all defenses they may have, including but not limited to defenses for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

12.     Defendants respectfully requests that the United States District Court for the Southern District of Texas, Brownsville Division, accept this Notice of Removal and that it assume jurisdiction of this action.

WHEREFORE, defendants Southern Foods Group L.P. and Suiza Foods Corporation hereby give notice that said cause of action is removed to this, the United States District Court for the Southern District of Texas, Brownsville Division.

**DATED:**    January _____, 2002

Respectfully submitted,

*Jerry L. Beane*
JERRY L. BEANE  *w/permission  KLB*
Attorney-in-Charge
State Bar No. 01966000
Southern Dist. Bar No. 8993
KAY LYNN BRUMBAUGH
State Bar No. 00785152
STRASBURGER & PRICE L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (Telecopier)

AND

*Alison Kennamer*
EDUARDO R. RODRIGUEZ
State Bar No. 17144000
ALISON KENNAMER
State Bar No. 112804000
RODRIGUEZ, COLVIN & CHANEY
1201 Ease Van Buren
Brownsville, Texas 78522
(956) 542-7441
(956) 541-2170 (Telecopier)

**ATTORNEYS FOR DEFENDANTS
SOUTHERN FOODS GROUP, L.P. AND SUIZA
FOODS CORPORATION (NOW DEAN FOODS
COMPANY)**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record on this the ~~3rd~~ day of January, 2002.

*Alison Kennamer*
Alison Kennamer

**DEFENDANTS' JOINT NOTICE OF REMOVAL** - Page 5

RUN DATE 01/03/02
RUN TIME 10:08 AM

* * * C L E R K ' S   E N T R I E S * * * *

F-STREET INVESTMENTS, INC.,A TEXAS CORPORATION

VS

SOUTHERN FOODS GROUP, L.P., ET AL

00500202                                          (10)
NATHANIEL PETER HOLZER
500 N. SHORELINE DR.,SUITE 900
CORPUS CHRISTI,TEXAS  78471 0000                  DAMAGES

11/30/01 ORIGINAL PETIT
11/30/01 JURY FEE: Pd.
12/03/01 CITATION (CM).:
        L.P.
12/03/01    SERVED:
12/03/01 CITATION (CM):
12/03/01    SERVED: 12/

CAUSE NO. _2001-11-5052-G_

_D_ _12 00_ ___ O'CLOCK ___ _P_ M.
┌URORA DE LA GARZA DIST. CLERK

NOV 3 0 2001

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC., | § | IN THE DISTRICT COURT OF |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| SOUTHERN FOODS GROUP, L.P. AND | § | |
| SUIZA FOODS CORPORATION, | § | _404th_ JUDICIAL DISTRICT |
| Defendants. | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION

F-Street Investments, Inc. f/k/a Hygeia Dairy Company complains of Southern Foods Group, L.P. and Suiza Foods Corporation.

### I.
### DISCOVERY LEVEL

1.   Discovery should be conducted under Level 2.

### II.
### PARTIES

2.   F-Street Investments, Inc. f/k/a Hygeia Dairy Company is a Texas Corporation with its principal office in Harlingen, Cameron County, Texas.

3.   Southern Foods Group, L.P., is a Delaware Limited Partnership engaged in the business of producing and distributing dairy products in Texas. Defendant may be served through its registered agent for service of process in Texas, Corporation Svc. Company, 800 Brazos, Austin, Texas 78701.

4.   Suiza Foods Corporation is a Delaware corporation engaged in the business of producing and distributing dairy products in Texas. Defendant may be served through its registered agent for service of process in Texas, Michelle P. Goolsby, 2515 McKinney Ave., Suite 1200, Dallas Texas, 75201.

### III.
### JURISDICTION AND VENUE

5.   The Court has personal jurisdiction over the Defendants because they have

committed torts, violated statutes, and breached a contract in whole or in part in Texas.  Venue exists in this court under Texas Civil Practice & Remedies Code §§ 15.001, 15.002.

## IV.
## FACTS

### A.      Hygeia Dairy Company - Background

6.      Hygeia Dairy Company was a family owned business that began operations in south Texas in 1927.  It had its headquarters in Harlingen, Texas.  Hygeia served the south Texas region generally bounded by Brownsville, Laredo, San Antonio, and Houston, and also had operations in Mexico.  It had processing plants in Corpus Christi and Harlingen, an ice cream plant in McKinney, distribution centers in Victoria, San Antonio, Laredo, McAllen, Brownsville, and Houston, and distribution subsidiaries in Mexico.  In the 1990's gross revenues were in the range of $50 million to $65 million per year.

### B.      Hygeia Decides to Sell

7.      Because of perceived trends of consolidation in the dairy industry, in about 1993 Hygeia management decided to sell Hygeia, which it believed was worth around $16 million for the physical assets alone (excluding accounts receivable and cash).  Hygeia retained a marketing firm and vigorously pursued potential purchasers.  In November 1994, Southern Foods offered Hygeia $9 million for the milk and ice cream businesses from Victoria south (the offer excluded Mexico and the ice cream plant in McKinney) which Hygeia believed was close to fair consideration.  However, in December of 1994 the Mexican peso collapsed after which Southern dropped its bid to $4.5 million.  Hygeia rejected the offer.

### C.      Unfair Competition

8.      There are substantial barriers to market entry in Hygeia's business due to the capital needed to acquire and operate a milk processing plant, to create a distribution infrastructure, and to market a new brand that is unfamiliar to local consumers.  Southern owns a dairy processing plant in San Antonio where it produces dairy products under its Oak Farms label.  Southern had not previously marketed its products in Hygeia's general marketing area, but began competing in Hygeia's marketing area and in doing so competed unfairly for customers.  It lowered its prices in

Hygeia's marketing area below what it was charging for the same items in the San Antonio area. Southern's sales force told Hygeia customers they should switch brands from Hygeia to Oak Farms because Southern "was going to put Hygeia out of business." Hygeia was forced to lower its prices to stay competitive and keep its customers and as a direct result suffered losses caused by the unfair competition. On information and belief, Southern had monopoly pricing power in the Hygeia marketing area at the time with control of in excess of 15% of the market.

9.      Plaintiff believes that Southern knowingly and intentionally lowered prices based on an objectively reasonable expectation of recouping its losses by later charging higher prices, that in doing so Southern's prices fell below its average variable cost, that Southern prices fell below its short-run profit-maximizing price and average total cost, and that Southern's benefit from the price-drops stemmed primarily from the price-drops' tendency to discipline and eliminate competition, particularly Hygeia, thereby enhancing Defendant's long-term ability to reap the benefits of monopoly power after it completed its contemplated purchase of Hygeia at a forced-sale price.

**D.      The Forced Sale**

10.      Hygeia suffered serious losses while Southern was competing unfairly to the point where in approximately December of 1998, Hygeia's outside auditors reported their intention to include a "going concern" qualification in Hygeia's financial statements for the year ending September 1998. Hygeia thereafter recommenced in earnest its efforts to find a buyer, armed with a valuation analysis done by its auditors that indicated Hygeia was worth from $14 million to $18 million.   Hygeia again approached Southern, which knew that Hygeia was in financial trouble, which had maintained an ongoing interest in the purchase of Hygeia, which had kept in touch with Hygeia about a possible purchase of Hygeia, and which had engaged in internal analysis of the value of Hygeia assets.  After months of negotiations Southern eventually made an offer, in mid-October of 1999, of only $9 million for almost all the operating assets of Hygeia.  By the time of the final offer Hygeia had no choice but to accept – Southern had Hygeia in a position where it could either sell for the price being offered or go out of business.  The sale was closed with an effective date of November 30, 1999.  On information and belief, Defendants now have monopoly

pricing power in Hygeia's old marketing area with control of in excess of 45% of the market.

11.      After the sale, Defendants raised their prices.

12.      On or about December 31, 1999, Suiza purchased Southern.      On further information and belief, the merger was preceded by information provided by Southern to Suiza regarding the background facts and the status of Southern's purchase of Hygeia, including Southern's apparent strategy of unfair competition against Hygeia to obtain monopoly pricing power and reap the resulting benefits, and as a result Suiza appears to have been a knowing intended beneficiary of Southern's unfair competition.

E.      **Defendants' Failures to Fulfill Contractual Obligations**

13.      The sale was documented by an Asset Purchase Agreement and a related Escrow Agreement.  Defendants agreed in the Asset Purchase Agreement to collect Plaintiff's accounts receivable for 120 days and pay such accounts receivable to Plaintiff.  Section 12.14 of the Asset Purchase Agreement reads, in pertinent part:

> Buyer agrees to attempt to collect the Accounts Receivable on behalf of the Company on a commercially reasonable basis and forward the proceeds of its collection efforts to the Company within five business days following the receipt by Buyer.   Payments received by Buyer which apply to both Buyer's and the Company's accounts receivable shall be paid to the Company in the amount equal to the portion o the payment attributed to the Accounts Receivable of the Company. . . .

14.      Defendants collected on many Hygeia invoices yet failed to account for or remit the collected funds.  After careful analysis, Hygeia's records indicate Defendants collected but did not remit in excess of a quarter of a million dollars in post-sale collections of Plaintiff's pre-sale wholesale accounts receivable.  Plaintiff provided Defendants with invoice itemizations on several occasions.  Plaintiff waited patiently for Defendants to remit its funds but never received full payment or complete information.

15.      Mario Castro was a wholesale milk customer of Hygeia in San Antonio who does business as Castro School Milk.  Mr. Castro's account balance due to Hygeia on November 30, 1999 (adjusted to include all credits due) was $121,800.27.  At that time, the account balance was already 60 days past due.  After that date, and during the 120 day period during which they had a contractual obligation to collect Plaintiff's accounts, Southern and Suiza continued to supply Castro

with milk and other products and collected on their own new invoices without requiring Castro to first pay Plaintiff's older invoices. Southern and Suiza did not put Castro on a "cash as you go" basis as was their policy for other customers with accounts that were 60 days past due—Defendants only cared about collection of their own receivables from Castro. As a result, Plaintiff was forced to sue Castro in order to collect and has obtained a judgment. Castro still owes Hygeia in excess of $50,000 (plus costs and interest). Neither the lawsuit nor any other collection efforts would have been necessary if Southern and Suiza had required Castro to pay its old balances first, as would have been commercially reasonable.

16. Plaintiff had a retail milk delivery business that it sold to Southern. The balance due to Hygeia for retail accounts receivable is $188,556.40. That sum was rendered uncollectable when Southern shut down all retail routes on December 7, 1999. Southern and Suiza thereafter refused to seek collection on the retail receivables on a commercially-reasonable basis during the balance of the 120-day period when they had a contractual obligation to do so.

17. Hygeia paid for and Rick Beaman approved repayment by Southern or Suiza all expenses for the 1999 Christmas parties at the Harlingen and Corpus Christi Plants. The total due for the Christmas parties is $7,135.00.

18. Southern and Suiza's Wichita Falls branch owes Hygeia $6,325.02 for ice cream dollies that it did not return. Had the dollies been returned they would have been counted as inventory and increased the sale price.

19. Under the Escrow Agreement Section 3(d) the parties agreed as follows:

Five Hundred Thousand Dollars ($500,000) of the Escrow Money will be held by Escrow Agent for a period of 120 calendar days from the date of this Agreement and will be available to satisfy Indemnity Claims and Inventory Claims. Upon the expiration of such 120 calendar day period, the Escrow Agent will distribute to Seller the sum of Four Hundred Thousand Dollars ($400,000) less the amount of any Indemnity Claims or Inventory Claims that have been received by Escrow Agent . . . One Hundred Thousand Dollars ($100,000) of the Escrow Money will continue to be held by Escrow Agent to satisfy Indemnity Claims until the first anniversary of the date of this Agreement, at which time Escrow Agent will distribute the balance of the Escrow Money to Seller less the amount of any Indemnity Claims that have been received by Escrow Agent.

20. Southern's and Suiza's allowable business-related indemnity claims under the

Escrow Agreement total $70,327.42. Defendants may also have indemnity claims for litigation expenses related to the *Moreno* and *Gonzales* cases, and have alleged that those indemnity claims are in the approximate amount of $23,000.00. However, Defendants have never provided any documentation to support those alleged amounts. Further, Moreno's claims against Southern were dismissed, and Gonzales' claims are soon to be dismissed. Hence, no further indemnity obligation will be incurred. All other indemnity claims alleged by Southern and Suiza constitute nothing more than gratuitous contributions by them.

21.     Pursuant to section 3(d) of the Escrow Agreement, $400,000.00 was to have been released to Plaintiff on March 29, 2000, less any unresolved indemnity claims as provided for by the Asset Purchase Agreement. The remaining $100,000.00 was to have been released on December 1, 2000. Plaintiff has made timely written demand for release of its funds but Defendants have refused.

## V.
### FIRST CAUSE OF ACTION
### VIOLATION OF THE SHERMAN ANTITRUST ACT
### [15 U.S.C. § 1 et seq.]

22.     Southern knowingly and intentionally engaged in predatory pricing in direct violation of the Sherman Antitrust Act and Suiza was the knowing and intentional beneficiary of such acts. Substantial barriers to market entry exist. Plaintiff believes that Defendant lowered prices with an objectively reasonable expectation of recouping its loss by charging higher prices in the future, that Defendant's prices fell below its average variable cost, that Defendant's prices were below its short-run profit-maximizing price and average total cost, and that Defendant's benefits due to the price-drop arose primarily from the price-drop's tendency to discipline and eliminate competition, thereby enhancing its long-term ability to reap the benefits of monopoly power.

23.     Defendant's conduct resulted in actual damages to Plaintiff measured by the difference in the forced sale price of Hygeia and the real value of the assets sold, plus all losses incurred by Hygeia in being forced to lower its prices to compete with Defendant's unfair prices.

24.     Pursuant to 15 U.S.C. § 15, Plaintiff sues to recover threefold its sustained

Plaintiff's Original Petition                          Page 6

damages, cost of suit, reasonable attorney's fees, and interest due to Defendants' unlawful, willful, and flagrant conduct.

**VI.**
**SECOND CAUSE OF ACTION**
**VIOLATION OF THE TEXAS ANTITRUST ACT**
**[TEX. BUS. & COMM. CODE § 15.05]**

25.    Southern knowingly and intentionally engaged in predatory pricing in direct violation of the Texas Antitrust Act and Suiza was the knowing and intentional beneficiary of such acts.  Substantial barriers to market entry exist.  Plaintiff believes that Defendant lowered prices with an objectively reasonable expectation of recouping its loss by charging higher prices in the future, that Defendant's prices fell below its average variable cost, that Defendant's prices were below its short-run profit-maximizing price and average total cost, and that Defendant's benefits due to the price-drop arose primarily from the price-drop's tendency to discipline and eliminate competition, thereby enhancing its long-term ability to reap the benefits of monopoly power.

26.    Defendant's conduct resulted in actual damages to Plaintiff measured by the difference in the forced sale price of Hygeia and the real value of the assets sold, plus all losses incurred by Hygeia in being forced to lower its prices to compete with Defendant's unfair prices.

27.    Pursuant to section 15.21(a) of the Texas Business and Commerce Code, Plaintiff is entitled to recover threefold its sustained damages, cost of suit, reasonable attorney's fees, and interest due to Defendants' unlawful, willful, and flagrant conduct.

**VII.**
**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT - ESCROW**

28.    Hygeia sues Defendants for breach of contract under the terms of the Asset Purchase Agreement and the Escrow Agreement due to Defendants failure to release escrowed sums when due.  Under the terms of the contracts, $305,743.30 (plus interest) was to have been released to Plaintiff on March 29, 2000 and another $100,000.00 (plus interest) was to have been released to Plaintiff on December 1, 2000.

29.    Defendants had no justification to prevent the timely escrow disbursements.  Such funds constitute Plaintiff's property as the legitimate proceeds from Plaintiff's sale of its assets.

Plaintiff is rightfully entitled to such funds, and Defendants' failure to agree to their release is a breach of the applicable contracts for which Plaintiff sues.

## VIII.
### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT - RECEIVABLES

30.     Plaintiff sues Defendants for breach of contract under the terms of the Asset Purchase Agreement due to Defendants' failure to collect wholesale accounts receivable on behalf of Plaintiff on a commercially-reasonable basis and thereafter forward the proceeds of its collection efforts to Plaintiff within five business days following receipt.

31.     Plaintiff sues Defendants for breach of contract under the terms of the Asset Purchase Agreement due to Defendants' failure to collect Plaintiff's accounts receivable from Mario Castro on a commercially-reasonable basis.  It was commercially unreasonable for Defendant to continue doing business with Castro without first demanding payment of Plaintiff's previous invoices.

32.     Plaintiff sues Defendants for breach of contract under the terms of the Asset Purchase Agreement due to Defendants' failure to collect Plaintiff's retail accounts receivable on a commercially-reasonable basis.  Instead, Defendants shut down all retail routes on December 7, 1999, and prevented the route men from collecting upon these accounts.  In fact, Defendants made virtually no effort at all to collect upon Plaintiff's retail receivables during the agreed 120-day period during which they had an obligation to do so.

33.     Defendant's actions constitute material breaches of Defendant's Asset Purchase Agreement for which Plaintiff sues.

## IX.
### FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT - REIMBURSEMENT

34.     Defendants agreed to repay Plaintiff for all expenses incurred during 1999 Christmas parties at the Harlingen and Corpus Christi plants.  Plaintiff relied on Defendants' representations to its detriment.  Total expenses for the Christmas parties amounted to $7,135.00.

## X.
## SIXTH CAUSE OF ACTION
## CONVERSION

35.     Defendants' intentionally and willfully converted Plaintiff's property (1) by failing to pay over Plaintiff's collected accounts receivable, (2) by preventing the disbursement Plaintiff's escrowed funds, and (3) by refusing to return Plaintiff's ice cream dollies.  Plaintiff therefore sues Defendants for conversion.

## XI.
## SEVENTH CAUSE OF ACTION
## RECOVERY OF ATTORNEYS FEES

36.     Plaintiff sues Defendants for all attorneys fees incurred due to Defendants' multiple breaches of contract.

## XII.
## EIGHTH CAUSE OF ACTION
## EXEMPLARY DAMAGES

37.     Plaintiff sues Defendants for exemplary damages for their intentional acts of conversion.

## XIII.
## RELIEF SOUGHT

38.     WHEREFORE, based upon the above facts and considerations, Plaintiff asks that Defendants be cited to answer and that, on final verdict from the jury this Honorable Court enter judgment for the following:

(1)     All actual damages incurred by Plaintiff due to Defendant's intentional violations of the Sherman Antitrust Act and the Texas Antitrust Act;

(2)     Multiple damages of the maximum amount provided for by statute;

(3)     All actual damages incurred for Defendants' multiple breaches of contract;

(4)     All Plaintiff's actual damages caused by Defendant's conversion;

(5)     Exemplary damages in an amount to be set by the jury;

(6)     All Plaintiff's reasonable attorney's fees incurred;

(7)     Pre and post judgment interest at the maximum rate provided for by law;

(8)     all costs of court; and

---

(9)    all further relief, at law and in equity, to which Plaintiff shows itself justly entitled.

Respectfully submitted,

Nathaniel Peter Holzer
State Bar No. 00793971
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

**ATTORNEYS FOR PLAINTIFF**
**F STREET INVESTMENTS, INC.,**
**A TEXAS CORPORATION F/K/A**
**HYGEIA DAIRY COMPANY**

# ORIGINAL

Citation for Personal Service   - BY CERTIFIED MAIL      Lit. Seq. # 5.003.01

## No. 2001-11-005052-G

## T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued thi citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may b taken against you.

TO: SUIZA FOODS CORPORATION
    c/o MICHELLE P. GOOLSBY
    2515 MCKINNEY AVENUE
    SUITE 1200
    DALLAS, TEXAS 75201

the         DEFENDANT       , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 404th Judicial District of Cameron County, Texas at the Courthouse of sai county in Brownsville, Texas.  Said        PETITION        was filed on NOVEMBER 30, 2001 .  A copy of same accompanies this citation.

The file number of said suit being No. 2001-11-005052-G.

The style of the case is:

F-STREET INVESTMENTS, INC.,A TEXAS CORPORATION
VS.
SOUTHERN FOODS GROUP, L.P., ET AL

Said petition was filed in said court by      NATHANIEL PETER HOLZER
(Attorney for            PLAINTIFF            ), whose address is
500 N. SHORELINE DR.,SUITE 900 CORPUS CHRISTI,TEXAS  78471

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville.

# ORIGINAL

Citation for Personal Service  — BY CERTIFIED MAIL     Lit. Seq. # 5.002.01

## No. 2001-11-005052-G

## T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.


TO: SOUTHERN FOODS GROUP, L.P.
    c/o CORPORATION SERVICE CO.
    800 BRAZOS
    AUSTIN, TEXAS 78701


the      DEFENDANT      , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFF'S ORIGINAL PETITION


at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 404th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said      PETITION      was filed on NOVEMBER 30, 2001 .  A copy of same accompanies this citation.

The file number of said suit being No. 2001-11-005052-G.

The style of the case is:


F-STREET INVESTMENTS, INC.,A TEXAS CORPORATION
VS.
SOUTHERN FOODS GROUP, L.P., ET AL


Said petition was filed in said court by      NATHANIEL PETER HOLZER
(Attorney for      PLAINTIFF      ), whose address is
500 N. SHORELINE DR.,SUITE 900 CORPUS CHRISTI,TEXAS  78471      .


The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.


The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.


Issued and given under my hand and seal of said Court at Brownsville,

CAUSE NO. 2001-11-5052-G

F. ___5:10_____ O'CLOCK __/2__ M
AURORA DE LA GARZA DIST. CLERK

DEC 2 8 2001

IN THE DISTRICT COURT OF CAMERON COUNTY TEXAS
RICK M. CORNEJO                    DEPUTY

| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DIARY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CAMERON COUNTY, TEXAS |
| | § | |
| SOUTHERN FOODS GROUP, L.P., | § | |
| AND SUIZA FOODS CORPORATION | § | |
| | § | |
| Defendants | § | 404TH JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE COURT:

COMES NOW, defendants Southern Foods Group, L.P. and Suiza Foods Corporation (now Dean Foods Company) (collectively "Defendants")and in response to Plaintiff's Original Petition, files this their Original Answer and Statement of Potential Counterclaims, and would show the Court the following:

### GENERAL DENIAL

1.      Defendants hereby enter a general denial as is permitted by Rule 92 of the Texas Rules of Civil Procedure, and request that plaintiff be required to prove by a preponderance of the evidence the charges and allegations made against defendants.

### SPECIFIC DENIALS

2.      Defendants specifically deny the allegations in plaintiff's First Cause of

Action; Violation of Sherman Antitrust Act, 15 U.S.C. § 1 et seq. Defendants deny that they engaged in conduct, either collectively or singularly, that would constitute a violation of the Sherman Antitrust Act.

3.     Defendants specifically deny the allegations of plaintiff's Second Cause of Action; Violation of the Texas Antitrust Act, Tex. Bus. & Comm. Code §15.05. Defendants deny that they engaged in conduct, either collectively or singularly, that would constitute a violation of the Texas Antitrust Act.

4.     Defendants specifically deny the allegations in plaintiff's Third Cause of Action; Breach of Contract-Escrow. Defendants deny that they engaged in conduct, either collectively or singularly, that would constitute a breach of contract under the terms of the Asset Purchase Agreement and the Escrow Agreement.

5.     Defendants specifically deny the allegations in plaintiff's Fourth Cause of Action; Breach of Contract-Receivables. Defendants deny that they engaged in conduct, either collectively or singularly, that would constitute a breach of contract under the terms of the Asset Purchase Agreement for failure to collect wholesale accounts receivable on behalf of plaintiff on a commercially-reasonable basis.

6.     Defendants specifically deny the allegations in plaintiff's Fifth Cause of Action; Breach of Contract-Reimbursement. Defendants deny that they engaged in conduct, either collectively or singularly, that would constitute a breach of contract for failure to repay plaintiff for expenses from Christmas parties.

## STATEMENT OF POTENTIAL COUNTERCLAIM

7.     Plaintiff filed for bankruptcy on March 27, 2000 in the United States

**DEFENDANTS' ORIGINAL ANSWER- PAGE 2**
721654.1/SP2/75935/0208/12262001

Bankruptcy Court, Southern District of Texas, Brownsville Division. As plaintiff is currently involved in this bankruptcy proceeding and an automatic stay has been issued, defendants may, at a later time, assert a counterclaim. Specifically, defendants may request a finding by the Court that the plaintiff's cause of action alleging violations of the Texas Antitrust Act was groundless and brought in bad faith. Pursuant to Tex. Bus. & Comm. Code § 15.21(a)(3), upon such a finding the Court shall award to the defendants a reasonable attorney's fee, court costs, and other reasonable expenses of litigation.

WHEREFORE, defendants pray that plaintiff take nothing by this suit, and that defendants go hence and recover costs expended.

Respectfully submitted,

_Jerry L. Beane_ w/ permission KYB
JERRY L. BEANE
State Bar No. 01966000
KAY LYNN BRUMBAUGH
State Bar No. 00785152
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (Telecopier)

AND

_Alison Kennamer_
EDUARDO R. RODRIGUEZ
State Bar No. 17144000
ALISON KENNAMER
State Bar No. 112804000
RODRIGUEZ, COLVIN & CHANEY
1201 East Van Buren
Brownsville, Texas 78522
(956) 542-7441
(956) 541-2170 (Telecopier)

**ATTORNEYS FOR DEFENDANTS
SOUTHERN FOODS GROUP, L.P. AND SUIZA
FOODS CORPORATION (NOW DEAN FOODS
COMPANY)**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record on this the 28th day of December, 2001.

_Alison Kennamer_
ALISON KENNAMER

**DEFENDANTS' ORIGINAL ANSWER - PAGE 4**

721654.1/SP2/75935/0208/12262001