IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 0 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION B-02-001 |
| | § | |
| DEAN FOODS COMPANY F/K/A | § | |
| SUIZA FOODS CORPORATION, AND | § | |
| SOUTHERN FOODS GROUP, L.P. | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |

### PLAINTIFF'S RESPONSE TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES F Street Investments, Inc., (herein "Plaintiff" or "Old Hygeia"), and files

this its Response to Defendants' Motion for Summary Judgment and requests that the Court deny

Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and

would respectfully show as follows:

### I.
### PRELIMINARY STATEMENT

**A.    Defendants' Motion for Summary Judgment on the Antitrust Issue is**
**Premature and Should Not Be Considered at this Time.**

1.    On November 20, 2001, Plaintiff sued Defendants for violation of the Sherman

Antitrust Act, violation of the Texas Antitrust Act, Breach of Contract, Conversion, Recovery of

Attorneys Fees, and Exemplary Damages.   An initial pre-trial conference was held and the

parties agreed that the case essentially consisted of two main components: first, the breach of

contract and conversion claims (collectively "contract claims"); second, the Antitrust claims

("antitrust claims").   Given the diverse nature of the claims, the parties agreed to bifurcate the

contract and antitrust claims for discovery and motions deadlines, as reflected in the Court's May 14, 2002 Scheduling Order.[1]

2.    On September 10, 2002, Defendants filed a Motion for Summary Judgment on all of Plaintiff's causes of action including Plaintiff's Antitrust claims.

3.    Summary Judgment is improper in this case because Defendants' Motion for Summary Judgment on Plaintiff's Antitrust claims is premature.

**B.    There are Genuine Issues of Material Fact Which Preclude Summary Judgment on the Antitrust Claims.**

4.    In the event the Court considers Defendants' Summary Judgment on Plaintiff's Antitrust Claims before Plaintiff has the opportunity to conduct discovery[2] on these issues, Defendants' own Motion fails to provide credible summary judgment evidence establishing the lack of genuine issues of material fact.   Therefore, these issues cannot be adjudicated by summary judgment.

**C.    Substantial Evidence Exists in Support of Plaintiff's Causes of Action.**

5.    Defendants have failed to meet their summary judgment burden by establishing the lack of genuine issues of material fact with regard to the causes of action pled by Plaintiff. Moreover, Summary judgment is not appropriate for Plaintiff's claims since Plaintiff has substantial evidence in support of its claims.

6.    With regard to the contract and conversion claims, Plaintiff has restated relevant portions from its own Summary Judgment Motion in this Response for this Honorable Court's reference.  However, rather than duplicating all exhibits from its Motion for Summary Judgment,

---

[1] Although the Scheduling Order does not state explicitly that the antitrust and contract claims are bifurcated, the parties agreed to this in Court and then for this reason filled in the Scheduling Order with two different dispositive motions deadlines.

Plaintiff incorporates by reference all exhibits used as summary judgment evidence in its Motion for Summary Judgment, which are already on file with the court.[3]  Therefore, all references to exhibits in this Response refer to the exhibits attached to Plaintiff's Motion for Partial Summary Judgment.

## II.
## ARGUMENT AND AUTHORITIES

**A.    Defendants' Motion for Summary Judgment on Antitrust Issues is Premature.**

7.      On or about April 29, 2002, a Joint Discovery/Case Management Plan under Rule 26(F) Federal Rules of Civil Procedure ("Joint Plan") was filed.

8.      On or about May 14, 2002 a Scheduling Order for Trial and Discovery Dates was entered by Judge Hilda Tagle.

9.      Pursuant to the Joint Plan and Scheduling Order for Trial and Discovery Dates, Plaintiff and Defendants agreed with respect to Rule 26(f)(2) regarding discovery, to structure discovery in phases, concentrating in the first phase on the Plaintiff's contract claims and filing a motion or motions for partial summary judgment on those claims, and focusing in the second phase on Plaintiff's Antitrust claims.

10.     Because Plaintiff F Street and Defendant Southern Foods are still in the first phase of discovery which concentrates on Plaintiff's Contract claims, Defendants' Motion for Summary Judgment on Antitrust issues is premature and should not be given consideration by this Court at this time.  It is disingenuous of Defendants to now file a Motion for Summary

---

[2] Consistent with the Court's Scheduling Order, Plaintiff has conducted some discovery on the breach of contract issue.  Defendants failed to provide any meaningful information in response to Plaintiff's initial written discovery requests on the Antitrust claims.  Therefore, substantial discovery remains for the Antitrust claims.

[3] "Rule 56 explicitly requires only that the evidence to which the nonmovant points be "on file"--not ... that the evidence be put on file by the nonmovant as part of its response..." Isquith v. Middle South Utilities, Inc., 847 F.2d 186, 198 (5th Cir.1988).

Judgment on Plaintiff's Antitrust claims without Plaintiff having had sufficient time to conduct the necessary discovery for the Antitrust claims.

**B.    The Lack of Sufficient Summary Judgment Evidence Demonstrates Defendants Have Failed to Establish the Absence of Genuine Issues of Material Fact.**

**i.    The Sherman and Texas Antitrust Claims.**

11.    A Plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove first that the prices complained of are below appropriate measure of its rival's costs; second it must demonstrate that the competitor had reasonable prospect or dangerous probability of recouping its investment in below-cost prices. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993)  The elements of a predatory pricing claim under Texas law are:  (1)  the seller has an objectively reasonable expectation of recouping its losses due to alleged predatory pricing by charging higher prices later, that is, predatory pricing is economically feasible; and (2)(a) the price charged is below average variable costs; or (b)(i) there are substantial barriers to market entry; and (ii) seller is charging price below its short-run profit-maximizing price and its average total cost; and (iii) benefits of seller's price depended on its tendency to discipline or eliminate competition and thereby enhance firm's long-term ability to reap benefits of monopoly power. *Caller-Times Publ g. Co. v. Triad Communications, Inc.*, 826 S.W.2d 576, 588 (Tex. 1992).

12.    Because there are material fact issues with regard to Southern Food's pricing of their dairy products, costs of production, and profit analysis, Defendants are not entitled to Summary Judgment in this case.

13.    Defendants' Motion for Summary Judgment relies on the conclusory statement contained in the Affidavit of Michael A. Bell, whereby Bell claims Southern Foods dairy

products are priced above the costs of production and never priced below the costs of production. *[Exhibit A, Bell Affidavit at 3, ƒ7]*. This is a wholly conclusory statement and is not supported by any evidence such as production cost reports or operating reports. As a result, a genuine factual dispute exists. Further, the Bell Affidavit says absolutely nothing about the relevant inquiries, being the Defendant's average variable cost, their short-run profit-maximizing price, or their average total cost.

14.     Defendants' Motion for Summary Judgment also relies on the affidavits of Michael A. Bell and Wallace Norwood, whereby conclusory statements contained within the affidavits are used to support Defendants' allegation that Southern Foods priced the dairy products sold in the *Valley,* above costs of production. First, neither affidavit makes a reference to the pricing of products sold in the "Valley;" rather, the two (2) affidavits simply address pricing at Defendants facility in San Antonio. *[Exhibit A, Bell Affidavit at 3, ƒ7 and Norwood Affidavit at 3, ƒ7]*. Once again, the statements are wholly conclusory and not supported by any evidence, such as reports analyzing Southern Food's cost of production of dairy products in the Valley. Again these affidavits say absolutely nothing about the relevant inquiries, being the Defendant's average variable cost, their short-run profit-maximizing price, or their average total cost. As a result, a genuine factual dispute exists.

15.     Defendants' Motion for Summary Judgment relies on the conclusory statements contained in the affidavit of Jimmy Wallace, whereby he claims the Oak Farms-McAllen branch from which Defendants distribute dairy products in the Valley, operated with a profit margin of approximately 6% of sales. *[Exhibit D, Wallace Affidavit at 1, ƒ1 and at 4, ƒ8]*. Once again, this statement is wholly conclusory and not supported by any evidence, such as a profit and loss report   . Again this affidavit says absolutely nothing about the relevant inquiries, being the

---

Defendant's average variable cost, their short-run profit-maximizing price, or their average total cost. As a result, a genuine factual dispute exists.

16.    It is ironic that Defendants, on page 15 of their Motion for Summary Judgment, have alleged that "F Street has provided no evidence regarding Southern Foods variable costs, fixed costs, or profits derived from its sale of dairy products in the Valley". Defendants themselves have done nothing more than provide self-serving conclusions in their Motion for Summary Judgment, unsupported by any facts or evidence. As such, Defendants' Motion for Summary Judgment on the federal and state anti trust claims should be denied.

**ii.    The Breach of Contract Claim.**

17.    On November 30, 1999, Southern Foods acquired almost all of the operating assets and inventory of F Street for slightly more than $9,000,000.00. An Asset Purchase Agreement and a related Escrow Agreement (collectively, the Agreements) memorialized the acquisition. The Agreements define the contractual rights of the parties. Under the Asset Purchase Agreement, Defendants contracted to collect Plaintiff's Accounts Receivable in a commercially reasonable manner for 120 days and remit all funds so collected to Plaintiff.

18.    Because there are material fact issues with regard to Defendant Southern Food's breach of its agreements with Plaintiff F Street, such as whether or not Southern Foods attempted to collect accounts on behalf of F Street on a commercially reasonable basis, Defendants are not entitled to Summary Judgment in this case.

19.    Defendants' Motion for Summary Judgment relies on the conclusory statements contained in the Affidavit of Scott McClarren, whereby such statements are used to support Defendants' allegation that Defendant Southern Foods employed essentially the same methods used by Plaintiff F Street sales representatives responsible for collection of the account

receivables. Scott McClarren's affidavit makes no reference to the actual methods used by F Street sales representatives responsible for collection of account receivables. Scott McClarren's affidavit simply states that after the acquisition, McClarren instructed his sales staff that they were to continue collecting F Street accounts receivables which typically involved placing phone calls to customers who were delinquent in payment and also making personal visits. *[Exhibit C, McClarren Affidavit at 4, ¶12]*. These statement have been twisted on page 10 of Defendants' Summary Judgment Motion to enable Defendants to incorrectly reach the conclusion that sales representatives for Southern Foods in fact placed phone calls and made personal visits to those behind in payment. However, no evidence has been provided specifying that collection practices were in fact employed by Southern Food's sales staff with regard to Plaintiff's outstanding account receivables, thus creating a genuine factual dispute. Moreover, the Plaintiff's claims for uncollected *wholesale* accounts receivable (with the exception of Mario Castro) have nothing to do with the Defendants' methods of collecting the receivables.

20.    Defendants' Motion for Summary judgment relies on the conclusory statements contained in the affidavit of Wallace Norwood, whereby such statements are used to support Defendants' claim that Southern Foods attempted to secure a payment arrangement and to resolve a dispute as to amount owed with regard to Mario Castro, a former F Street customer. Wallace Norwood's affidavit makes the conclusory statement that "Southern Foods continued its efforts directly with Castro to secure payment arrangement and to resolve a dispute as to amount owed." *[Exhibit E, Norwood Affidavit at 4, ¶9]*. No support has been provided by Defendants that collection attempts with regard to Mr. Castro were actually made, thus creating a genuine factual dispute.

21.    Defendants' Motion for Summary Judgment makes false assumptions by relying on statements contained in the Affidavit of Jimmy Wallace, whereby such statements are incorrectly used to support Defendants' allegation that Defendant Southern Food's retail delivery drivers continued their collection efforts on Plaintiff F Street accounts even after that portion of the business ceased operations.  Jimmy Wallace's affidavit simply states that he instructed the delivery route drivers to continue their efforts to attempt to collect on outstanding retail account receivables that were due F Street.  *[Exhibit D, Wallace Affidavit at 5, ƒ10]*.  These statements have been manipulated on page 11 of Defendants' Summary Judgment Motion to incorrectly reach the conclusion that retail delivery drivers for Southern Foods in fact continued their collection efforts on F Street accounts.  No evidence has been provided specifying that collection practices were in fact employed by Southern Food's retail delivery drivers with regard to Plaintiff's outstanding retail account receivables, thus creating a genuine factual dispute.

**iii.    The Conversion Claim.**

22.    The elements of a cause of action for conversion under Texas law are as follows:

> Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the owner's rights.  ***Bandy v. First State Bank,*** 835 S.W.2d 609, 622 (Tex.1992).  In order to prevail, the plaintiffs must show that, at the time of the conversion, they were the legal owners, had legal possession, or were entitled to legal possession of the property.  ***Whitaker v. Bank of El Paso,*** 850 S.W.2d 757 (Tex.App.--El Paso 1993, no writ).  Additionally, they must demand return of the property and demonstrate the defendant's refusal to do so. ***Id.***

*W.G. Pettigrew Distributing Co. v. Borden, Inc.*, 976 F.Supp. 1043, 1057 (S.D.Tex. 1996)(italics added).

23.    Because there are material fact issues with regard to conversion elements such as the rights to possession of Plaintiff's property and the exercising of dominion or control over Plaintiff's property, Defendants are not entitled to Summary Judgment in this case.

---

24.     Defendants, once again, have done nothing more than provide self-serving conclusions in their Motion for Summary Judgment, unsupported by any facts or evidence. As support for Defendants' claim it did not wrongfully exercise dominion and control over F Street's accounts receivables in a manner inconsistent with F Street's rights, Defendants' rely on the conclusory statements contained in the Affidavit of Scott McClarren, whereby such statements are used to support Defendants' allegation that Defendant Southern Foods control over payments of F Street's old accounts was justified because Southern Foods employed essentially the same methods used by Plaintiff F Street sales representatives responsible for collection of the account receivables. As stated earlier, Scott McClarren's affidavit makes no reference to the methods used by F Street sales representatives responsible for collection of account receivables. Scott McClarren's affidavit simply states that after the acquisition, McClarren instructed his sales staff that they were to continue collecting F Street accounts receivables which typically involved placing phone calls to customers who were delinquent in payment and also making personal visits. *[Exhibit C, McClarren Affidavit at 4, ƒ12]*. These statement have again been twisted on page 23 of Defendants' Summary Judgment Motion to enable Defendants to incorrectly reach the conclusion that sales representatives for Southern Foods in fact placed phone calls and made personal visits to those behind in payment. However, no evidence has been provided specifying that collection practices were in fact employed by Southern Food's sales staff with regard to Plaintiff's outstanding account receivables, thus creating a genuine factual dispute.

25.     With regard to Plaintiff F-Street's right of possession to its funds in escrow, a requisite element of its conversion claim, Defendants' claim F Street had only a future interest in the escrow funds until any indemnity, inventory, or environmental claims were satisfied.

Defendants maintain on page 23 of their Motion for Summary Judgment that the indemnity claims have yet to be disbursed and as a result, F Street only has a future interest in the escrowed funds. Defendants, once again, have done nothing more than provide self-serving conclusions in their Motion for Summary Judgment, unsupported by any facts or evidence, thus creating a genuine factual dispute.

26.    Defendants go one step further, on page 24 of their Motion for summary Judgment, Southern Foods assumes that if they did acquire F Street's property, they did so legally. Where property is originally acquired legally, to prove a claim for conversion the plaintiff must establish the Defendants refused to return the property after the plaintiff demanded its return. *Presley v. Cooper*, 284 S.W.2d 138, 141 (Tex. 1955). Defendants use self-serving conclusions, something Defendants have done all too often in there Motion for Summary Judgment, whereby Defendants claim to have made numerous offers to authorize the escrow agent to disburse the remaining funds but that F Street has refused these offers. This self-serving conclusion is unsupported by any facts or evidence, thus creating a genuine factual dispute.

### iv.    F Street's Attorneys Fees Claim.

27.    F Street's claim for Attorneys Fees is based on Southern Foods' breaches of contract. Because Defendants' summary judgment fails to establish the lack of genuine issues of material fact with regard to Plaintiff's breach of contract claim based on its agreements with Plaintiff F Street, Defendants are not entitled to Summary Judgment on Plaintiff's Breach of Contract cause of action which serves as the basis for Plaintiff's recovery of Attorneys Fees. Therefore, summary judgment cannot be granted on the attorneys fees claim.

      **v.**     **F Street's Exemplary Damages Claim.**

      28.    F Street's cause of action for Exemplary Damages is based on Southern Foods'

acts of conversion. Because Defendants have likewise failed to establish their entitlement to

summary judgment on F Street's conversion claim, Defendants are not entitled to Summary

Judgment on either Plaintiff's Conversion cause of action or Plaintiff's cause of action for

Exemplary Damages.

      **C.**     **Substantial Evidence Exists in Support of Plaintiff's Causes of Action.**

      29.    Along with its Response, Old Hygeia submits the following exhibits as evidence[4]:

| | |
|---|---|
| A. | Asset Purchase Agreement (less exhibits); |
| B. | Escrow Agreement; |
| C. | Affidavit of Doug Purl with attached business records (C-1, C-2 & C-3); |
| D. | Letter from Old Hygeia's counsel to Defendants' counsel dated September 15, 2000; |
| E. | Letter from Old Hygeia's counsel to Chase Bank dated September 15, 2000; |
| F. | Letter from Defendants' counsel to Old Hygeia's counsel dated September 18, 2000.; |
| G. | Letter from Old Hygeia's counsel to Defendants' counsel dated September 26, 2000 (with attachment); |
| H. | Letter from Defendants' counsel to Chase Bank dated October 4, 2000; |
| I. | Letter from Defendants' counsel to Old Hygeia's counsel dated October 4, 2000; |
| J. | Letter from Old Hygeia's counsel to Defendants' counsel dated October 5, 2000; |
| K. | Letter from Defendants' counsel to Old Hygeia's counsel dated February 28, 2001; |
| L. | Letter from Old Hygeia's counsel to Defendants' counsel dated March 9, 2001; |
| M. | Letter from Defendants' counsel to Old Hygeia's counsel dated May 10, 2002; |
| N. | Letter from Defendants' counsel to Old Hygeia's counsel dated May 24, 2002; |
| O. | Letter from Defendants' counsel to Old Hygeia's counsel dated July 1, 2002; |
| P. | Moreno's proof of claim; |
| Q. | Docket sheet from *Moreno* lawsuit; |

---

[4] All exhibits are attached to Plaintiff's Motion for Summary Judgment previously filed with the Court and incorporated by reference as if fully set forth herein and attached hereto.

R.    Affidavit of Nathaniel Peter Holzer;
S.    Summary Spreadsheet Of Invoices, Denied Amounts, And Interest;
T.    Defendants' Responses to Old Hygeia's Second Set of Requests For Admissions;
U.    Excerpts from deposition of Wallace Norwood; and
V.    Affidavit of Marta Gaddis, C.P.A.

i.    **Substantial Evidence Establishing Accounts Receivable Collected And Not Paid Over.**

30.    Old Hygeia sold virtually all its operating assets to Defendant Southern Foods Group, L.P. ("Southern") effective November 30, 1999. The sale was documented by an Asset Purchase Agreement ("APA") and a related Escrow Agreement. *[Exhibits A and B]*.

31.    Under the APA, Southern contracted to collect Old Hygeia's Accounts Receivable[5] in a commercially reasonable manner for 120 days and remit all funds so collected to Old Hygeia. See *[Exhibit A, p. 35, ¶12.14]*, which states in pertinent part:

> [Southern] agrees to attempt to collect the Accounts Receivable on behalf of [Old Hygeia] on a commercially reasonable basis and forward the proceeds of its collection efforts to [Old Hygeia] within five business days following the receipt by [Southern]. Payments received by [Southern] which apply to both [Southern's] and [Old Hygeia's] accounts receivable shall be paid to [Old Hygeia] in the amount equal to the portion of the payment attributed to the Accounts Receivable of [Old Hygeia]. . . .

32.    As of December 1, 1999, and for the next 120 days, Southern Food Group, L.P., assumed control over all funds received as payment of F Street's Accounts Receivable. [Exhibit C, ¶ 3] Defendants have collected and are currently in possession of $230,317.43 in funds attributable to Old Hygeia's Accounts Receivable. *[Exhibit C, ¶ 4, Exhibit C-1 and Exhibit S]*. Old Hygeia made a demand for Defendants to return its property *[Exhibit J, p. 2, ¶5a]* and specifically identified its property that Defendants possessed. *[Exhibit G]* On several occasions Old Hygeia sent Defendants other lists of its Accounts Receivable, similar to the one in Exhibit

---

[5] Capitalized terms not otherwise defined within this motion have the meaning ascribed to them in the APA.

---

G, and also spent much time on the telephone in numerous calls with Defendants attempting to obtain return of its property. *[Exhibit C, ¶5]*. Defendants refused to give Old Hygeia its property except for a partial payment of $44,598.52 on November 27, 2000 *[Exhibits C, ¶ 9 and Exhibit C-3]*, and another partial payment of $31,930.07 on May 24, 2002. *[Exhibits N & O]*.

     33.    The amount of Old Hygeia's Accounts Receivable that Defendants collected and kept is proved by three different methods:

     METHOD 1 – Old Hygeia analyzed its records of unpaid accounts, invoice by invoice, and then obtained verification from each customer that the invoices had been paid. *[Exhibit C, ¶6 and Exhibit C-1]*. During this process many of Old Hygeia's former customers refused to provide copies of the cancelled checks and would only voluntarily provide Old Hygeia with the check number, date and amount. *[Exhibit C, ¶7]*. The total of Old Hygeia's Accounts Receivable that were collected and kept by Defendants as calculated by this method is $230,317.43 *[Exhibit C, ¶¶ 4 & 6 and Exhibit C-1]*.

     METHOD 2 – Starting with the outstanding balance due on all of its Accounts Receivable that existed as of the date of the sale, Old Hygeia then reduced that total by the amounts that Defendants actually did pay and also applied all other applicable reductions, credits, and offsets. *[Exhibit C ¶¶ 11-17]*[6]. This method of calculation results in an amount due of $230,339.40, which is an immaterial difference of only $21.97 more than the amount due as calculated using Method 1.[7] *[Exhibit C ¶¶ 18 & 19]*.

     METHOD 3 – Old Hygeia asked Southern to admit or deny its receipt of Old Hygeia's money for each of its invoices listed on Exhibit C-1, and Southern responded by denying it had received payments for a number of those invoices. *[Exhibit T and Exhibit S, columns K & L]*.

---

[6] F Street is not waiving its claim against Defendants for the unpaid receivables arising from the retail milk delivery business, those sums due are just not a part of this motion for partial summary judgment.

However, Old Hygeia had obtained copies of some of its customers' cancelled checks as proof of payment. *[Exhibit C, ¶ 7 & 8, Exhibit C-2 & attachments A-AA, and Exhibit S, column H]*. Southern formally denied in its written discovery responses its collection of $74,665.26 of Old Hygeia's Accounts Receivable for which Old Hygeia has copies of cancelled checks proving that Southern did in fact collect them. *[Exhibit C-2 & attachments A-AA, Exhibit S, columns H, K & L, and Exhibit T]*.

34.    In their efforts to fulfill their obligation to collect and turn over Old Hygeia's Accounts Receivable, Defendants put a person they had just hired in charge. *[Exhibit U, Norwood Depo., 27/8-15; 39/23]*. He was instructed to keep Old Hygeia's money separated from the Defendants' money *[Id. 27/9-11]*, but Defendants may not have segregated Old Hygeia's funds from their own *[Id. 44/20 - 45/9]* Defendants had to abandon the computer system they were using to account for Old Hygeia's receivables about three months into the 120 day period because it was not a very good system, was not very well developed, was "about halfway done," and was "a problem". *[Id. 36/15-37/5; 39/3]*. Defendants had two receivables clerks running the collection operation in the beginning; there were several different persons doing the accounting work on collection of Old Hygeia's Accounts Receivable during their 120 day contractual collection period, some of whom were subsequently laid off. *[Id., 39/21 – 41/8]*. Defendants did not have a written policy on documentation of bank deposits at the time. *[Id. 45/18-20]* Defendants had no internal auditing function in the San Antonio office at the time. *[Id. 46/16-18]*. Defendants' Controller who had overall responsibility for the collection of Old Hygeia's Accounts Receivable did not know if Defendants were having any problems with the system they had set up to account for, collect and remit Old Hygeia's Accounts Receivable. *[Id.*

---

[7] Old Hygeia waives prosecution of the $21.97 difference.

*39/4-20]* In November, 2000, Defendants sent Old Hygeia a check for $44,598.52 as payment for Accounts Receivable it had collected and not previously remitted—which was about eight months after Defendants 120 day collection period was supposed to have ended. *[Exhibit C-3].* In May of 2002, Defendants sent Old Hygeia a check for $31,930.07 as payment for Accounts Receivable it had collected and not previously remitted—which was over two years after Defendants got the money and their 120 day collection period was supposed to have ended. *[Exhibit N and  Exhibit S, columns G & I].*

35.    There is substantial evidence that Defendants breached the APA by collecting and failing to remit $230,317.43 of Old Hygeia's Accounts Receivable.  Old Hygeia has proven Defendants' collection of the Accounts Receivable and the amount, and has further proven that Defendants have no idea how much they actually collected because their accounting system is a mess.  Defendants' bookkeeping practices for its custody and care of the Accounts Receivable entrusted to their collection were deplorable, and in such disarray it is no wonder they have no clue what was collected or not.  The fact that they located $31,930.07 of Old Hygeia's collected Accounts Receivable almost two years after the expiration of the 5-day deadline for payment is proof of how bad the Defendants bookkeeping systems really were.  The fact that they formally denied receipt of Old Hygeia's funds when Old Hygeia has copies of cancelled checks proving they did is the icing on the cake.  In contrast, Old Hygeia's books and records are accurate and reliable and have proven the amounts due by two different independent methods that provided virtually the same figures for the amount due.  Any attempt by Defendants to create a fact issue based on their own defective record keeping should be given no credence by the Court.

36.    Therefore, substantial evidence exist to show that Defendants breached the contract with Old Hygeia in this respect and owe Old Hygeia $230,317.43. Defendants have failed to sustain their burden of proof to obtain summary judgment on this issue.

    **ii.    Substantial Evidence of Defendants' Withholding Of Plaintiff's Funds in Escrow.**

37.    Under the Escrow Agreement Section 3(d) *[Exhibit B, p. 2]* the parties agreed as follows:

> Five Hundred Thousand Dollars ($500,000) of the Escrow Money will be held by Escrow Agent for a period of 120 calendar days from the date of this Agreement and will be available to satisfy Indemnity Claims and Inventory Claims. Upon the expiration of such 120 calendar day period, the Escrow Agent will distribute to [Old Hygeia] the sum of Four Hundred Thousand Dollars ($400,000) less the amount of any Indemnity Claims or Inventory Claims that have been received by Escrow Agent . . . One Hundred Thousand Dollars ($100,000) of the Escrow Money will continue to be held by Escrow Agent to satisfy Indemnity Claims until the first anniversary of the date of this Agreement, at which time Escrow Agent will distribute the balance of the Escrow Money to [Old Hygeia] less the amount of any Indemnity Claims that have been received by Escrow Agent.

38.    There were no Inventory Claims. *[Exhibit C, ¶ 20 and Exhibit M]*. Defendants have made Indemnity Claims under the Escrow Agreement that Old Hygeia does not dispute totaling $70,327.42. *[Exhibit J, p. 1 and Exhibit M]*. Disputed Indemnity Claims currently total $49,328.43, inclusive of Defendants' Indemnity Claims for litigation expenses related to the *Moreno* and *Gonzales* lawsuits *[Exhibit M]*. The total amount of Defendants' Indemnity Claims is $119,655.85 plus any additional amounts that may be incurred in the *Moreno* lawsuit. *[Exhibit M]*.

39.    The Indemnity Claim related to the *Gonzales* lawsuit is capped because Southern is no longer in the case. *[Exhibit M]*. Defendants have never provided Old Hygeia with any documentation to support the amount of their Indemnity Claims arising from their costs of

defending the *Moreno* and *Gonzales* lawsuits. *[Exhibit C, ¶ 21]*.

40.    The Indemnity Claim for the *Moreno* lawsuit cannot substantially increase because Moreno's claims against Southern in that lawsuit are confronted with a motion for summary judgment that Southern filed over two years ago and to which Moreno never filed a responsive pleading. *[Exhibit Q, docket entry #12]*. At the last hearing in the *Moreno* lawsuit before Judge Hinojosa, Moreno's counsel admitted in open court on the record that the law controlling his claims against Southern was bad for his position. *[Exhibit R, ¶ 4]*. The reason Defendants are still parties to the *Moreno* lawsuit is their own decision not to seek severance of the case against them from the case against F Street; when Old Hygeia recently sought similar relief, Judge Hinojosa denied Old Hygeia's motion and instead invited the Defendants to seek severance if they wanted to have a hearing on their motion for summary judgment. *[Exhibit Q, docket entries #19 & #23 and Exhibit R, ¶ 4]*. The *Moreno* lawsuit concerns a claim of a former Old Hygeia employee for which Old Hygeia had insurance coverage and on which the insurer is providing a defense. *[Exhibit C, ¶ 22]*. Moreno filed a proof of claim in Old Hygeia's bankruptcy for $200,000.00. *[Exhibit P]*.

41.    The deadline for Defendants to make any additional Indemnity Claims has long since expired. *[Exhibit A, p. 27, ¶ 11.3]*.

42.    Pursuant to section 3(d) of the Escrow Agreement, $400,000.00 was to have been released to Old Hygeia on March 29, 2000, less any unresolved Indemnity Claims as provided for by the APA, and the remaining $100,000.00 was to have been released on December 1, 2000. *[Exhibit B, p.3, ¶3(d)]*. Old Hygeia made timely written demand for release of its funds, *[Exhibits D, E, J, and L]* but Defendants have refused and instead instructed the escrow agent to withhold distribution of all of Old Hygeia's funds. *[Exhibits H, I and M]*.

43.    There is substantial evidence regarding Old Hygeia's current entitlement to
$370,000.00 (plus related interest) out of the Escrow Account. *[Exhibits B, D, E, J, and M]*. As
of March 29, 2000, and December 1, 2000, Old Hygeia was the legal owner and was entitled to
possession of its escrowed and segregated property, less amounts set aside for Indemnity Claims.
Defendants' Indemnity Claims do not currently entitle them to any portion of Old Hygeia's funds
in escrow because Defendants are in possession of Old Hygeia's Accounts Receivable in an
amount that is more than twice the amount of their Indemnity Claims and Old Hygeia asserts a
right of setoff.[8] *[Exhibits M and P, see facts and argument, supra]*.

44.    The Defendants rely solely on the tenuous claim that remains pending against
Southern in the *Moreno* lawsuit to prevent Old Hygeia from regaining possession of its property.
Importantly, for purposes of this motion, Old Hygeia is not seeking the release of any funds from
the escrow account that it admits it may owe for Indemnity Claims or which are still the subject
of a dispute as to whether indemnity is owed or not. Once the release of its funds is made, there
will still be a cushion of over $10,000.00 for any additional attorneys fees Defendants might
incur in seeking severance of Moreno's claim against Southern from the claims of Moreno
against Old Hygeia, and for a hearing (if such would even be necessary) and entry of their long
overdue summary judgment dismissing Southern from the case. Note also, that while Old

---

[8]  Old Hygeia's setoff rights are clearly recognized under Texas law as described in *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 618 (Tex.1992):

> *See Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) (right of setoff "grounded on the absurdity of making A pay B when B owes A"); *Norris v. Commercial Bank,* 231 Ala. 204, 163 So. 798, 801 (1935) ("It is generally held that where parties have cross-demands against each other, the real indebtedness is the excess of one debt over the other"); *Sullivan v. Merchants' Nat'l Bank,* 108 Conn. 497, 144 A. 34, 34 (1928) (purpose of doctrine to prevent "circuity of actions"); 8 GEO. 2, ch. 24, 4. [FN3] *See generally* Michael E. Tigar, Comment, *Automatic Extinction of Cross-demands:* Compensation *from Rome to California,* 53 CAL.L.REV. 224 (1965) (tracing the history of setoff to Roman law). The doctrine has continuing vitality today. TEX.R.CIV.P. 97.

Hygeia does not dispute its contractual obligation to indemnify Defendants for its costs to defend the *Gonzales* and *Moreno* lawsuits, or for any eventual judgment against Southern. in the *Moreno* suit (although the likelihood of Moreno getting a judgment against Southern is so implausible as to bear no consideration), the legal fees must be reasonable and so Old Hygeia reserves the right to dispute the amounts claimed upon review of the lawyers bills and upon receiving proof of actual payment by Defendants of the amounts claimed. Such dispute could only reduce the overall amount of Defendants' Indemnity Claims. Moreno's claim is limited as a matter of law to the amount on his proof of claim, $200,000.00, so even assuming Moreno wins it all, $170,000.00 of Hygeia's property has been tied up by Defendants for almost two years with absolutely no justification at all. The fact that Moreno never responded to Southern's motion is telling, as is his lawyer's admission in open court that the law is against his client with respect to the claims against Southern. Finally, Moreno's claims against Hygeia are insured, which further reduces the likelihood that Moreno even cares about seeking a judgment against Southern. In fact, had Southern sent counsel to the April 2002 hearing with Judge Hinojosa, it is quite possible that the matter would be done with by now.

45.     As set forth above, substantial evidence establishes that Defendants breached the contract with Old Hygeia in this respect. Thus, summary judgment should be denied in all respects.

iii.     **Substantial Evidence of Defendants' Failure To Reimburse For Christmas Parties.**

46.     In December, 1999, Mr. Purl, president of Old Hygeia, spoke on the telephone with Rick Beamon, a person he knew was in a position of authority with Defendants. *[Exhibit C, ¶23].* Mr. Beamon told Mr. Purl that Defendants would reimburse all of Old Hygeia's

---

expenses for the 1999 Christmas parties at the Harlingen and Corpus Christi plants. *[Exhibit C, ¶24]*. The total of Old Hygeia's expenses for the 1999 Christmas parties at the Harlingen and Corpus Christi plants was $7,135.00. *[Exhibit C, ¶24]*. Old Hygeia made demand for payment on September 15, 2000. *[Exhibit D]*. As of the date of Mr. Purl's Affidavit, none of these expenses have been repaid. *[Exhibit C, ¶ 24]*.

47.    There is substantial evidence showing Old Hygeia's current entitlement to $7,135.00 in reimbursement for Christmas parties. Defendants have failed to offer any credible summary judgment evidence to the contrary.

**iv.    Substantial Evidence of Defendants' Failure To Return Or Pay For Ice Cream Dollies.**

48.    Defendants' Wichita Falls branch owes Old Hygeia $6,325.02 for ice cream dollies that were not returned. *[Exhibit C, ¶ 25]*. Had the dollies been returned they would have been counted as inventory and increased the sale price. *[Exhibit A, p.7, ¶ 4.2]*.

49.    There is substantial evidence setting forth Old Hygeia's current entitlement to $6,325.02 for ice cream dollies that were not returned. Defendants have failed to provide summary judgment showing that Defendants did not breach the contract with Old Hygeia in this respect.

**v.    Plaintiff is Entitled to Interest on the Accounts Receivable and for Other Amounts Owed.**

50.    Defendants owe Old Hygeia interest on its Accounts Receivable that were collected and kept, on its unpaid reimbursement for Christmas parties, and on the value of its ice cream dollies, at 10% simple interest per year, without compounding, from the 180th day after they received written notice of the claims to the date Defendants give Old Hygeia back its

property. Texas Finance Code 304.003; *International Turbine Services, Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir.2002); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex.1998) (Texas common law allows prejudgment interest to accrue at same rate as postjudgment interest on damages awarded for breach of contract.) Written notice of the claim with respect to the Accounts Receivable was received by Defendants' counsel on September 26, 2000. *[Exhibit G]*. The 180th day after this written notice was March 25, 2001. Written notice of the claim with respect to the Christmas party expenses and the ice cream dollies was received by Defendants' counsel on October 5, 2000. *[Exhibit J]*. The 180th day after this demand was April 4, 2001.

51.    With regard to the $31,930.07 paid on May 24, 2002, the interest owed as of the date Old Hygeia's money was returned was $3,717.90. *[Exhibit S, column M]*.

52.    With regard to the $74,665.26 of Old Hygeia's Accounts Receivable that Defendants' denied having collected but for which Old Hygeia has copies of cancelled checks proving they did, the amount due as of September 10, 2002 is $10,923.65. *[Exhibit S, column N]*. Interest on this sum continues to accrue at $20.46 per day. *[Exhibit V, ¶ 8]*.

53.    With regard to all of Old Hygeia's Accounts Receivable that Defendants have collected and not paid over, the amount of interest due as of September 10, 2002, is $35,749.54. *[Exhibit S, column O]*. Interest on this sum continues to accrue at $63.10 per day. *[Exhibit V, ¶ 9]*.

54.    With regard to the ice cream dollies and the unpaid reimbursements for Christmas parties, the amount of interest due as of September 10, 2002 is $1,936.03. *[Exhibit S]*. Interest on this sum continues to accrue at $3.69 per day. *[Exhibit V, ¶10]*.

**vi.    Substantial Evidence of Plaintiff's Right to Attorneys Fees.**

55.    Old Hygeia has incurred and will incur $42,500.00 in reasonable attorney fees and expenses due to Defendants' breaches of contract, plus an additional $20,000.00 should any judgment awarded be appealed by Defendants to the Court of Appeals, and an additional $20,000.00 more for any further appeal by Defendants to the Supreme Court.. *[Exhibit R, ¶ 5]*. There is no issue of material fact as to the amount of fees and expenses, or that the amount was reasonable and necessary, or that Old Hygeia is entitled to recover its attorneys fees and expenses pursuant to the Texas Civil Practice and Remedies Code.

### vii.    Conversion.

56.    The elements of a cause of action for conversion under Texas law are as follows:

> Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with the owner's rights. *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex.1992). In order to prevail, the plaintiffs must show that, at the time of the conversion, they were the legal owners, had legal possession, or were entitled to legal possession of the property. *Whitaker v. Bank of El Paso*, 850 S.W.2d 757 (Tex.App.--El Paso 1993, no writ). Additionally, they must demand return of the property and demonstrate the defendant's refusal to do so. *Id.*

*W.G. Pettigrew Distributing Co. v. Borden, Inc.*, 976 F.Supp. 1043, 1057 (S.D.Tex. 1996)(italics added). Old Hygeia has satisfied all these elements as a matter of law and is entitled to summary judgment on the issue of the Defendants' liability for converting its receivables, its ice cream dollies, and a substantial portion of its escrowed funds. There is no material factual dispute that Old Hygeia was the legal owner and was entitled to legal possession of its ice cream dollies as of December 1, 1999, of its receivables within 5 days after Defendants collected them, and of its escrowed funds on the dates they were to be released pursuant to the APA. Defendants have failed to offer any credible summary judgment evidence demonstrating the absence of a genuine issue of material fact with regard to Plaintiff's conversion claim. Therefore, summary judgment should be denied.

### D.    Standard of Review.

57.    Although summary judgment is proper in any case where there is no genuine issue of material fact, Defendants have failed to demonstrate that the Court should grant summary judgment. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

58.    A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claim. *Celotex Corp.*, 477 U.S. at 322-25, 106 S.Ct. at 2552-54; *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996). Defendants cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of its claim. Rather, Defendants must demonstrate an absence of a genuine factual dispute. *See Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555. Only if Defendants meet their burden is Plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

59.    In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to Plaintiff as the nonmovant. *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996).

### III.
### CONCLUSION

60.    Defendants have failed to meet their burden under Federal Rule of Civil Procedure 56 to obtain summary judgment in this case. Further, Plaintiff has set forth substantial

evidence in support of its causes of action. Therefore Plaintiff requests that the Court deny Defendants' Motion for Summary Judgment in its entirety.

WHEREFORE, Plaintiff requests that this Court Deny Defendants' Motion for Summary Judgment in its entirety and that it have such other and further relief to which it is entitled.

Respectfully submitted,

Nathaniel Peter Holzer
Attorney in Charge
State Bar No. 00793971
Admissions No. 21503
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 888-5555

Michael J. Urbis
State Bar No. 20414130
Admissions No. 15132
*Jordan, Hyden, Womble & Culbreth, P.C.*
2390 Central Blvd., Suite G
Brownsville, Texas 78520
Telephone: (956) 542-1161
Telecopier: (956) 542-0051

**ATTORNEYS FOR PLAINTIFF
F STREET INVESTMENTS, INC., A TEXAS
CORPORATION F/K/A HYGEIA DAIRY
COMPANY**

## CERTIFICATE OF SERVICE

I, Nathaniel Peter Holzer, hereby certify that a true and correct copy of the foregoing instrument was served on the following attorneys of record by U. S. First Class Mail, postage prepaid, on this the 3rd day of October, 2002.

Jerry L. Beane
Kay Lynn Brumbaugh
Strasburger & Price, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202

Eduardo R. Rodriguez
Alison Kennamer
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren
Brownsville, Texas 78522

Michael J. Urbis