**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

JUL 0 3 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| v. | § | Civil   Action   B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. AND | § | |
| SUIZA FOODS CORPORATION | § | |

### DEFENDANTS' MOTION TO SET ASIDE SETTLEMENT AGREEMENT AND SUPPORTING BRIEF

Defendants Southern Foods Group, L.P. ("Southern Foods") and Suiza Foods Corporation (now Dean Foods Company, "Dean") file this Motion to Set Aside Settlement Agreement and Supporting Brief. This motion and brief are supported by the attached appendix containing, among other items, the affidavits of Jerry L. Beane (Ex. 1), Kay Lynn Brumbaugh (Ex. 2), Alison D. Kennamer (Ex. 3) and Patrick Ford (Ex. 4). For the reasons stated below, defendants' motion should be granted.

### STATEMENT OF THE ISSUE TO BE RULED UPON BY THE COURT

Whether the settlement agreement in this case should be set aside due to the parties' mutual mistake of a material fact, *i.e.*, not knowing that the Court had signed an Order granting in large part defendants' motion for summary judgment on March 31, 2003 (including summary judgment for the defendants on the highly disputed accounts receivable claim which was still the subject of ongoing settlement negotiations), when notice of the summary judgment order was not provided prior to the execution and partial performance of the settlement agreement because of an error by the District Clerk's office? Although this circumstance is highly unusual, at least one court when

faced with a somewhat similar situation determined that the settlement agreement should be avoided. *Farhat v. Rassey*, 294 N.W. 707 (Mich. 1940) (copy attached as Ex. 5).

## SUMMARY OF THE ARGUMENT

The parties to the settlement agreement were operating under a material mutual mistake of fact when they reached agreement regarding the resolution of F Street's accounts receivable claim. When the resolution was reached – that resolution being payment by defendants of $200,000 to settle F Street's accounts receivable claim – neither party was aware that the Court had entered an order several days before which found in defendants' favor on the accounts receivable claim. Thus, the parties believed, mistakenly, that the accounts receivable claim was still in dispute when in reality it was not.

The parties' lack of awareness was due to an error in the District Clerk's office which resulted in a six-week delay in the defendants' receiving notice of the summary judgment order. Clearly, this clerical error and the ensuing mutual mistake by the parties resulted in extreme prejudice to defendants, for they paid $200,000 in settlement of an ostensibly disputed claim, when in fact it was no longer disputed but had been resolved in defendants' favor. Not only were the defendants unaware of the granting of summary judgment in their favor as to the majority of F Street's claims, but defendants were also unaware that the Court had set an April 15, 2003 deadline for the filing of a second summary judgment motion on F Street's antitrust claim.

Under these circumstances, the Court should exercise its equitable powers to set aside the settlement agreement to return this case to its status immediately after the summary judgment order was entered and before the settlement agreement was

finalized and executed. The Court should further amend its order of dismissal consistent with the summary judgment order and permit defendants a reasonable period of time in which to file a second summary judgment motion as to F Street's antitrust claim. Finally, the Court should order F Street to return to defendants the amount of $275,000 which defendants paid to F Street as the result of the mutual mistake.

## FACTUAL BACKGROUND

On October 30, 2002, mediation was held in this case in the offices of Mr. Leo Salzman of Harlingen. During mediation, the parties reached a basic oral agreement to settle all claims, subject to reaching an agreement for an arbitration process on F Street's commercial accounts receivable claim. (Ex. 1 at ¶ 2)

Throughout the period between October 31, 2002 and March 17, 2003, the parties continued settlement negotiations in an effort to resolve outstanding material issues regarding the settlement, including the arbitration process for the accounts receivable claim. (Ex. 1 at ¶ 3; Ex. 2 at ¶ 4) In mid-March, 2003, when the parties still had been unable to reach agreement regarding the procedures for arbitrating the accounts receivable claim, defendants' counsel asked plaintiff's counsel to propose a lump-sum amount to settle the accounts receivable claim and avoid the expense and time associated with an arbitration process and otherwise finalize the settlement as to all other claims. (Ex. 2 at ¶ 4-5; Ex. 4 at ¶ 3) At some point during the period between March 17 and March 31, plaintiff's counsel responded to defendants' request for a lump-sum proposal and proposed payment from defendants in the amount of $200,000 to settle the accounts receivable claim. (Ex. 2 at ¶ 5) Unknown to counsel for either plaintiff or defendants, the Court had entered an Order on March 31, 2003 (entered on the Clerk's docket on April 1, 2003) which granted in large part the defendants' motion

for summary judgment, including granting summary judgment in defendants' favor as to the still-disputed accounts receivable claim (the "Summary Judgment Order"). (Ex. 1 at ¶ 7)

Still unaware of the Summary Judgment Order, on the morning of April 3, 2003, defendants' counsel telephoned plaintiff's counsel and accepted the plaintiff's $200,000 proposal to settle the accounts receivable claim. (Ex. 2 at ¶ 8) During that same telephone conversation, defendants' counsel and plaintiff's counsel agreed that defendants' counsel would prepare an initial draft of a settlement agreement for review by plaintiff's counsel. (Id.) Plaintiff's counsel indicated that he was too busy to work on a settlement agreement at that time. A few hours later, defendants' counsel received by electronic mail a draft of a settlement agreement from plaintiff's counsel, despite the discussion only a few hours before regarding defendants' counsel agreement to undertake to prepare the initial draft of the agreement. (Ex. 2 at ¶ 6 and attached Ex. 2(A))

The settlement documents were not finalized and fully executed by all parties until April 30, 2003. (Ex. 2 at ¶ 8-9) Pursuant to the terms of the Settlement Agreement, defendants paid to plaintiff the amount of $275,000, of which $200,000 was attributable to the accounts receivable claim. (Ex. 2(C))

On or about April 30, 2003, defendants' counsel forwarded to the Clerk for filing an agreed order of dismissal of this action. (Ex. 2 at ¶ 9) The Court signed its own form of order of dismissal on May 9, 2003, and it was entered on the docket on May 12, 2003. In the dismissal order, the Court retained jurisdiction over any settlement that may exist.

On May 12, 2003 – approximately 6 weeks after the Summary Judgment Order was entered – defendants' local counsel from the firm of Rodriguez, Calvin & Chaney learned about the Summary Judgment Order for the first time.  (Ex. 3 at ¶ 5)  Two days later, on May 14, 2003, defendants' attorney-in-charge Jerry Beane and his law partner Kay Lynn Brumbaugh first learned about the Summary Judgment Order when Mr. Beane received it by mail.  (Ex. 1 at ¶ 4; Ex. 2 at ¶ 10)

Throughout the period from May 14, 2003 until the filing of this motion, defendants' counsel investigated the reason for the delay in receiving notice of the Summary Judgment Order and also conferred with plaintiff's counsel regarding this issue.  (Ex. 1 at ¶¶ 5, 7; Ex. 2 at ¶11-12)  Plaintiff's counsel Mr. Holzer has represented to defendant's counsel Jerry Beane and Kay Lynn Brumbaugh that he was not aware of the Summary Judgment Order at the time Ms. Brumbaugh called him to accept the plaintiff's proposal to settle the accounts receivable claim for $200,000.  Mr. Holzer has further represented that he did become aware of the Summary Judgment Order shortly thereafter on that same day, prior to his forwarding to Ms. Brumbaugh the draft settlement agreement.  (Ex. 1 ¶ 7)  A few days later, at a time when plaintiff's counsel had knowledge of the Summary Judgment Order and defendants' counsel did not, plaintiff's counsel Mr. Holzer wrote defendants' counsel regarding the additional $200,000 amount, affirmatively representing it as being paid by Southern Foods "on account of the disputed commercial accounts receivable."  (Ex. 2 at ¶ 7 and attached Ex. 2(B))

Had defendants been aware of the Court's entry of the Summary Judgment Order, defendants would not have agreed to pay $200,000 to settle a claim that the Court had already determined should be dismissed.  (Ex. 4 at ¶ 5; see also Ex. 1 at ¶ 6)

It is reasonably certain that the six-week-delay in defendants' receipt of notice of the Summary Judgment Order was the result of an error in the District Clerk's office. (Ex. 1 at ¶ 5; Ex. 2 at ¶ 12) This error was likely caused by the initial erroneous assignment of the wrong instrument number to the Summary Judgment Order, which was discovered by the Clerk's office when it docketed the dismissal order in May 2003. (*Id.*) The ramifications of the clerical error and the ensuing delay in the defendants' receipt of notice have had serious adverse consequences to defendants. (Ex. 4 at ¶ 4-5) In an effort to mitigate these consequences, on or about June 18, 2003, defendants proposed to plaintiffs that the accounts receivable claim be settled for the amount of $30,000 rather than the original $200,000, which was agreed to while the parties were operating under a mutual mistake concerning the existence of the Summary Judgment Order. On June 27, 2003, plaintiff rejected defendants' proposal and instead stated that plaintiff would file suit to enforce the settlement agreement. (Ex. 2 at ¶ 13)

## ARGUMENT

Under Texas law, mutual mistake is a basis for the equitable relief of rescinding a contract. *See, e.g., Williams v. Glash,* 789 S.W.2d 261 (Tex. 1990). As demonstrated above, plaintiff and defendants were under a mutual mistake concerning a basic fact that was material (*i.e.*, the parties believed there was an ongoing "dispute" regarding the accounts receivable claim when in fact the Court had granted summary judgment to the defendants on that claim ) and essential to the formation of the settlement agreement, and that mistake injuriously affected the rights of defendants, causing defendants to pay $200,000 to F Street to settle a claim that this Court had already determined should be dismissed.

There is little relevant case law applicable to the current unique circumstances, presumably because this type of situation fortunately rarely arises. However, at least one court has dealt with a similar situation in which a settlement agreement was finalized after the court had entered a judgment and before counsel for the parties learned of the judgment. *Farhat v. Rassey*, 294 N.W. 707 (Mich. 1940) (copy attached as Ex. 5), involved the dissolution of a partnership and a request for an accounting. In the morning of January 18, 1940, the court filed a written opinion in which it determined that plaintiff was entitled to approximately $3,900 as his share of the partnership's assets. *Id.* at 707. On that same morning, defense counsel contacted plaintiff's counsel and proposed a settlement in the amount of $1,400. Counsel for the parties met later that day and agreed on the $1,400 settlement, reduced the agreement to writing and delivered the settlement check. Plaintiff's counsel later received the trial court's opinion which awarded his client a much greater sum of money. *Id.* Plaintiff then filed a motion to repudiate the settlement and for a decree based on the findings of the court in the earlier opinion. The trial court granted the motion and entered a decree based on its earlier opinion. *Id.*

In affirming the trial court's decision, the Michigan Supreme Court determined that the parties

> were acting under a basic mutual mistake in assuming that the case had not been decided at the time they negotiated and consummated their settlement. All mistakenly felt certain that the case had not yet been determined. . . They cannot be held to have assumed, or to have intended to assume by their compromise, the risk of being mistaken in these basic regards. For such mistake, the settlement, like any other contract may be rescinded. . . . Knowledge that the case had already been determined would have put their negotiations on a different footing, if negotiations there would have been at all.

294 N.W. at 708.

Unquestionably, as in *Farhat v. Rassey*, a basic assumption on which the settlement agreement was made – that all claims, including the accounts receivable claim were still in dispute – was mistaken. Had the parties known about the Summary Judgment Order, their negotiations would have been on a dramatically different footing. Indeed, it is doubtful there would have been any further negotiation regarding the account receivable claim.[1]   Certainly, defendants would not have accepted F Street's proposal regarding the accounts receivable claim and paid F Street $200,000 to settle this claim which, unknown to the parties, had already been decided by the Court in defendants' favor. Indeed, the instant situation presents an even more compelling case for setting aside the settlement agreement than did the situation in *Farhat v. Rassey* where the operative events occurred all in the same day. Here, the Summary Judgment Order was entered days before defendants accepted F Street's $200,000 proposal for the accounts receivable claim and weeks before the settlement agreement was actually finalized and fully executed.

Not only were defendants adversely affected by their failure to receive timely notice about the granting of summary judgment as to the majority of F Street's claims, but they were also adversely affected by their failure to be notified that the Court had provided them an opportunity to file a second summary judgment motion as to F Street's antitrust claim on or before April 15, 2003.

---

[1] Defendants recognize that the court in *Harbor Ins. Co. v. Stokes*, 45 F.3d 499 (D.C. Cir. 1995), disagreed with the result in *Farhat v. Rassey. Harbor Ins.* is distinguishable. In that case, the parties had concluded their settlement agreement before either party had notice of the court's order. Here, the agreement was neither finalized nor executed when the Summary Judgment Order was entered. More importantly, the parties' lack of notice of the court order in *Harbor Ins.* was not due to an error in the clerk's office in providing timely notice as occurred here. Had notice been timely provided, defendants' local counsel presumably would have received the Summary Judgment Order by fax on April 1, 2003.

## CONCLUSION

For the reasons stated above, defendants request that the Court exercise its equitable powers and grant Defendants' Motion to Set Aside Settlement Agreement and enter an Order that: (1) sets aside the settlement agreement; (2) amends the Court's order of dismissal consistent with the summary judgment order; (3) permits defendants thirty days in which to file a second motion for summary judgment directed at F Street's antitrust claim; and (4) orders F Street to return to defendants the settlement funds in the amount of $275,000 within 10 days of the date of this Order.

DATED: July 3, 2003.

Respectfully submitted,

JERRY L. BEANE  by KLB
Attorney-in-Charge
State Bar No. 01966000
Southern Dist. Bar No. 8993
KAY LYNN BRUMBAUGH
State Bar No. 00785152
Southern Dist. Bar No. 21341
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (Telecopier)

AND

EDUARDO R. RODRIGUEZ
State Bar No. 17144000
Southern Dist. Bar No. 1944
ALISON KENNAMER
State Bar No. 112804000
Southern Dist. Bar No. 12023
RODRIGUEZ, COLVIN & CHANEY
1201 East Van Buren
Brownsville, Texas 78522
(956) 542-7441
(956) 541-2170 (Telecopier)

**ATTORNEYS FOR DEFENDANTS
SOUTHERN FOODS GROUP, L.P.
AND SUIZA FOODS CORPORATION
(NOW DEAN FOODS COMPANY)**

## CERTIFICATE OF CONFERENCE

I, Kay Lynn Brumbaugh, one of the counsel for Defendants, hereby certify that on July 3, 2003, I conferred with Mr. Pete Holzer, one of the counsel for plaintiff regarding the relief sought in this motion. We were unable to agree about the disposition of this motion. Mr. Holzer stated that plaintiff was opposed to the relief sought in this motion.

_____
KAY LYNN BRUMBAUGH

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record on this the 3rd day of July, 2003 via U.S. Mail.

_____
KAY LYNN BRUMBAUGH

## <u>INDEX OF APPENDIX</u>

|  | <u>Exhibit No.</u> |
|---|---|
| Affidavit of Jerry L. Beane | 1 |
| Copy of envelope containing Summary Judgment Order | 1(A) |
| Copy of fax authorization form from Clerk's Office | 1(B) |
| Affidavit of Kay Lynn Brumbaugh | 2 |
| April 3, 2003 email message from Pete Holzer | 2(A) |
| April 7, 2003 letter from Pete Holzer | 2(B) |
| Settlement agreement | 2(C) |
| Affidavit of Alison D. Kennamer | 3 |
| Affidavit of Patrick Ford | 4 |
| *Farhat v. Rassey*, Michigan Supreme Court opinion | 5 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| v. | § | CIVIL ACTION B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. AND | § | |
| SUIZA FOODS CORPORATION | § | |

## AFFIDAVIT OF JERRY L. BEANE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

JERRY L. BEANE, being duly sworn, states:

1. "My name is Jerry L. Beane. I am an attorney licensed to practice law in Texas. I am a partner in Strasburger & Price, LLP, Dallas, Texas. I am lead counsel for the defendants Southern Foods Group, L.P. and Suiza Foods Corporation (now Dean Foods Company)("Dean") in this case. I am over the age of 18 years and have never been convicted of a felony. I am competent to testify to the matters stated in this Affidavit. The matters stated in this Affidavit are based on my personal knowledge except as stated in the Affidavit or indicated by its language. If called as a witness, I would testify to the matters stated in this Affidavit.

2. I attended the mediation in this case on October 30, 2002 in the offices of Leo Salsman, Esq. in Harlingen, Texas. Also present at the mediation for the defendants were Alex Madrazo, Esq., an attorney employed by Dean and Alison Kennamer of Rodriquez, Colvin & Chaney, Brownsville, Texas, also attorney of record for the

defendants.  At the mediation for F Street were its counsel of record Pete Holzer, Lee Richards and Doug Purl.  During the mediation, the parties reached a basic oral agreement to settle all claims subject to reaching an agreement for an arbitration process on the commercial accounts receivable claim of plaintiff F Street.  The parties did not prepare or sign any writing regarding the discussions at mediation.

3.    Following the mediation, I had communications with counsel for plaintiff F Street in an effort to resolve the outstanding issues regarding the arbitration process for the accounts receivable claim of F Street and regarding other provisions of the settlement documents.  Many of the discussions with counsel for F Street regarding the arbitration process for the account receivable claim and other provisions of the settlement documents were handled by my partner, Kay Lynn Brumbaugh of Strasburger & Price, LLP, Dallas, Texas.  During the settlement discussions with F Street, I understood that the Court had not ruled on defendant's motion for summary judgment.

4.    I did not know of the Court's Order which granted Defendants' Motion for Summary Judgment on the commercial accounts receivable claim until May 14, 2003.  On May 14, 2003, I received by mail from the office of the District Clerk a copy of the Order.  The envelope from the office of the District Clerk was postmarked May 12, 2003.  A true and correct copy of the envelope reflecting the postmarked date and my handwritten notation of the date of receipt (made at the time I received it) is attached as Exhibit "A."  A fax authorization form from the District Clerk accompanied the Order.  The fax authorization form reflects that instrument #15 – the 19-page summary judgment order – was mailed to me on May 12, 2003.  A true and correct copy of the fax authorization form is attached as Exhibit "B."



UNITED STATES DISTRIC        RT
SOUTHERN DISTRICT OF       S
POST OFFICE BOX 61010
HOUSTON, TEXAS 77208

OFFICIAL BUSINESS



Received
5-14-03



neopost
$01.060
05/12/2003
Mailed From   77002
00 154294
N045J8T008218
US POSTAGE

Notice:   The attached order has been entered.

Jerry Lynn Beane   1:02-cv-00001 15 aty
Strasburger & Price
901 Main St
Ste 4300
Dallas, TX   75202

-------------------------------------------------

1:02-cv-00001 #15
19 page(s).
05/12/03

-------------------------------------------------

## AUTHORIZATION TO SEND NOTICES
## BY FACSIMILE

In all cases where I appear as an attorney, the Clerk of the United
States District Court for the Southern District of Texas may send
me notices by facsimile transmission rather than mail.
See Fed.R.Civ.P. 77, Fed.R.Crim.P. 49, Fed.R.Bankr.P. 9022,9036.

This telephone line is dedicated for facsimile transmission:

Fax:   (_____) _____

Name: _____   State Bar Number: _____

Signature: _____

Complete ONLY information that is different from the address listed above.

Firm: _____

Suite: _____

Street or P. O. Box: _____

City, State and Zip: _____

Business Telephone:  (_____) _____

Mail to:   Attorney Admissions
           United States District Clerk
           P. O. Box 61010
           Houston, TX 77208

Control:   CV-INS_image5-23553

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| **F STREET INVESTMENTS, INC.** § | |
| **A TEXAS CORPORATION F/K/A** § | |
| **HYGEIA DAIRY COMPANY** § | |
| § | |
| **v.** § **Civil Action B-02-001** | |
| § | |
| **SOUTHERN FOODS GROUP, L.P. AND** § | |
| **SUIZA FOODS CORPORATION** § | |

**AFFIDAVIT OF KAY LYNN BRUMBAUGH**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

KAY LYNN BRUMBAUGH, being duly sworn, states as follows:

1.  "My name is Kay Lynn Brumbaugh.  I am of sound mind and over the age of eighteen (18) years of age, competent in all respects to make this Affidavit, and I have personal knowledge of all facts stated herein and they are true and correct.

2.  I am a partner in the law firm of Strasburger & Price, L.L.P.  I am one of the attorneys representing the defendants in the above-styled matter and have been an active participant in the defense of this case.  I have also been an active participant in the settlement negotiations in this case.

3.  I am aware that on October 30, 2002, this case was mediated at the offices of Leo Salzman in Harlingen.  I am also aware that the parties reached a basic oral agreement to settle the claims, subject to reaching agreement regarding an arbitration-type process to resolve the commercial accounts receivable claim.

4.   Beginning shortly after the mediation and up until approximately March 16, 2003, I personally participated in discussions with F Street's counsel Pete Holzer regarding the documentation of the settlement agreement, including the arbitration process for the receivables claim.   By mid-March 2003, when the parties were unable to reach agreement regarding a process for resolution of the accounts receivable claim, I was authorized by defendants to request F Street to make a proposal to settle its accounts receivable claim for a lump-sum amount.   I made such a request to F Street via email communication with F Street's counsel Mr. Holzer.

5.   At some point during the period between March 17 and March 31, 2003, Mr. Holzer responded with a proposal requesting virtually the entire amount of the plaintiff's damages claim for the disputed accounts receivable

6.   Between April 1 and April 3, 2003, Mr. Holzer and I had telephone conversations regarding the settlement of the accounts receivable claim.   Ultimately, on the morning of April 3, I called him and stated that defendants agreed to pay the $200,000 amount proposed by F Street to settle the accounts receivable claim.   During that conversation, Mr. Holzer and I agreed that I would prepare the initial draft of the settlement agreement.   It was my impression that Mr. Holzer was too busy to undertake to prepare the initial draft that day, and as I recall, he may have even mentioned that he was too busy to do so.   At 1:14 p.m. that same day, I received an email from Mr. Holzer, a true and correct copy of which is attached as Exhibit A, which forwarded a draft settlement agreement prepared by Mr. Holzer.   Mr Holzer stated that his clients "desire to consummate our settlement as quickly as possible."

7.  On April 7, 2003, Mr. Holzer faxed a letter agreement to my partner Jerry Beane and me, a true and correct copy of which is attached as Exhibit B, which outlines the settlement in principle and expressly refers to an "additional payment of $200,000.00 by Southern Foods to F Street on account of the disputed commercial accounts receivable."

8.  During the period from April 3, 2003 until approximately April 29, 2003, Mr. Holzer and I had numerous communications, by telephone and email, regarding revisions to and the finalizing of the settlement agreement. I was not aware during any of that period of time or prior to that time period that the Court had entered an order on the parties' summary judgment motions. Mr. Holzer did not mention to me that he was aware that the Court had entered a summary judgment order.

9.  On April 30, 2003, the settlement agreement was executed by defendants, and I sent to Mr. Holzer a fully executed version of the settlement agreement, a $275,000 check payable to F Street and a letter for the escrow agent. A true and correct copy of the settlement agreement is attached as Exhibit C. On that same day, I also sent the original, executed Agreed Order of Dismissal to the Clerk for presentation to the Court.

10.  On May 14, 2003, I learned for the first time, when Jerry Beane entered my office, that the Court had signed a summary judgment order on March 31, 2003.

11.  On or about May 19, 2003, I began to investigate the reason for the approximate six-week delay in our office's receipt of the Court's summary judgment order.

12.  Through a series of phone calls with Ms. Yvonne Halsey in the Houston Clerk's office and Ms. Olivia Gutierrez in the Brownsville Clerk's office, I learned that the Court's summary judgment order was originally assigned the erroneous instrument number of

14 (the docket entry corresponding with the defendants' reply brief in support of summary judgment) when it was entered on the docket on April 1, 2003. Subsequently, the error was discovered – presumably during the period in between when the Clerk's office received the agreed order of dismissal from me on May 1, 2003 and when the Clerk entered the Court's order of dismissal on May 12, 2003. The summary judgment order was then assigned the proper instrument number – number 15 – and it was mailed to our office on May 12, 2003.

13. In an effort to mitigate the adverse consequences to defendants resulting from the lack of timely notice of the Court's summary judgment order, on June 18, 2003, defendants proposed to plaintiffs that the accounts receivable claim be settled for the amount of $30,000. On June 27, 2003, plaintiff rejected defendants' proposal and instead, through Mr. Holzer, stated that plaintiff would file suit to enforce the settlement agreement."

FURTHER AFFIANT SAYETH NOT

_____
KAY LYNN BRUMBAUGH

SUBSCRIBED AND SWORN TO BEFORE ME, a notary public, on this 2nd day of July, 2003.

My Commission Expires:

_7-14-2006_____

_____
Notary Public in and for
The State of Texas

DANYELLE STONE
Notary Public
STATE OF TEXAS
My Comm. Expires 07-14-2008

**Kay Lynn Brumbaugh - F Street v Southern**

| | |
|---|---|
| **From:** | Pete Holzer <pholzer@mail.jhwclaw.com> |
| **To:** | Kay Lynn Brumbaugh <kay.lynn.brumbaugh@strasburger.com>, Jerry Beane <jerry.beane@strasburger.com> |
| **Date:** | 4/3/2003 1:14 PM |
| **Subject:** | F Street v Southern |
| **CC:** | Doug Purl <gpena@swbell.net>, Mike Urbis <murbis@jhwclaw.com> |

My clients desire to consumate our settlement as quickly as possible so I have prepared the attacheed draft of a settlement agreement for your review and consideration.

I have attached the draft in both work and .pdf formats.

My clients have not reviewed this document so I reserve the right to make any necessary changes.

Thanks,

Pete

# Jordan, Hyden, Womble & Culbreth, P.C.
## Attorneys At Law

500 N. Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

# *Fax Transmittal Cover Page*

### April 7, 2003

*Client Number*
F Street
4015.001

PLEASE DELIVER THIS FACSIMILE TO THE PERSON IN YOUR OFFICE LISTED BELOW:

**ATTENTION:**  Jerry Beane
and
Kay Lynn Brumbaugh      214-651-4330
Doug Purl                         956-423-3092
Michael Urbis                    956-542-0051

**Civil Action No. B-02-001; F Street Investments v. Southern Foods, et al**

**SENDER:**   Nathaniel Peter Holzer

You should receive      2      pages, *including this cover sheet.*

**SENDER TELEPHONE #:** (361) 884-5678
**SENDER FAX #:** (361) 888-5555

If Problems Occur During Transmission Call: (361) 884-5678 and Ask for Stephanie.

**CONFIDENTIALITY NOTICE:** The documents accompanying this telecopy transmission contain confidential information which is legally privileged. The information is intended only for the use of the recipient named above. If you have received this telecopy in error, please immediately notify us by telephone to arrange for return of the original documents to us, and you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance of the contents of this telecopy information is strictly prohibited.

# JORDAN, HYDEN, WOMBLE & CULBRETH

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
500 NORTH SHORELINE, SUITE 900
CORPUS CHRISTI, TEXAS 78471

**NATHANIEL PETER HOLZER**

TELEPHONE (361) 884-5678
TELECOPIER (361) 888-5555

April 7, 2003

Via Facsimile
Jerry L. Beane
Kay Lynn Brumbaugh
Strasburger & Price LLP
901 Main Street Suite 4300
Dallas, Texas 75202

RE:   Civil Action No. B-02-001; *F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company vs. Southern Foods Group, L.P. and Suiza Foods Corporation*, In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Jerry and Kay Lynn:

Following up on my phone call with Kay Lynn last Thursday in which we reached a settlement on the last remaining issue in this case, I sent you a proposed form of settlement agreement and release that set forth the terms of the settlement our clients have agreed to. I would appreciate hearing from you at your earliest convenience on whether you will need any changes to the form of the settlement document. In the meantime, I would ask that you execute and return this letter confirming that this case is settled on terms we agreed to at the mediation last year, plus the additional payment of $200,000.00 by Southern Foods to F Street on account of the disputed commercial accounts receivable.

Sincerely,

Nathaniel Peter Holzer

NPH/sae

AGREED AND APPROVED:

_____
Jerry L. Beane
cc:   Via Facsimile:
      Doug Purl
      Michael Urbis

Received by Strasburger & Price, L.L.P. on 4/7/2003 6:31:52 PM (Central Daylight Time)

## COMPROMISE SETTLEMENT AGREEMENT AND RELEASE

This COMPROMISE SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is made and entered into by and among all the following parties hereto (collectively "Settling Parties"):

(a) F-Street Investments, Inc. f/k/a F Street Dairy Company, a Texas Corporation with its principal office in Harlingen, Cameron County, Texas ("F Street").

(b) Southern Foods Group, L.P., a Delaware Limited Partnership, and Dean Foods Company f/k/a Suiza Foods Corporation, a Delaware corporation (collectively "Southern").

Southern denies any liability to F Street. However, the Settling Parties being mutually desirous of putting an end to all disputes between them and wishing to settle all their differences with respect thereto, and in order to avoid the time and expense associated with protracted litigation, hearings, and trials, all of which is acknowledged by the Settling Parties to be valid and binding consideration for this Agreement, and in consideration of the benefits to accrue to each of the Settling Parties by virtue of this Agreement, the Settling Parties hereto agree as follows:

### I.
### DEFINITIONS

**Effective Date** when used in this Agreement shall mean April 10, 2003.

### II.
### RECITALS

A.     F Street began operations in south Texas in 1927. In about 1993 F Street management decided to sell F Street. Southern owns a dairy processing plant in San Antonio where it produces dairy products under its Oak Farms label. In about 1994 Southern began doing business in the Rio Grande Valley.

B.     In mid-October of 1999, Southern purchased the assets of F Street for approximately $9 million. The sale was closed with an effective date of November 30, 1999. The sale was documented by an Asset Purchase Agreement and a related Escrow Agreement.

C.     On March 15, 2000, F Street filed for bankruptcy. Its chapter 11 Plan was confirmed on November 5, 2002, and the plan vested F Street with full ownership of any and all claims against Southern.

D.     In November 2001, F Street filed Cause No. 2001-11-5-52-G, styled *F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company vs. Southern*

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 1

*Foods Group, L.P. and Suiza Foods Corporation,* in the District Court for Cameron County, Texas, 404th Judicial District (the "State Court Case"). The State Court Case was removed to the United States District Court for the Southern District of Texas, Brownsville Division, on or about January 3, 2002 and assigned Civil Action No. B-02-001; still bearing the style, *F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company vs. Southern Foods Group, L.P. and Suiza Foods Corporation* (the "Lawsuit").

E.      The Settling Parties conducted discovery and each filed a motion for summary judgment.    The Settling Parties engaged in mediation and subsequent negotiations, resulting in this Agreement.

## III.
## F STREET'S AGREEMENT AND OBLIGATIONS

F Street agrees, acknowledges, and warrants as follows:

(a)      On or before the Effective Date it will provide Southern with an agreed Order bearing the original signature of counsel for Diego Moreno dismissing with prejudice all claims of Diego Moreno against Southern Foods.

(b)      It will fully cooperate with Southern in obtaining a dismissal with prejudice of the Lawsuit, including but not limited to causing its attorney of record to execute and promptly return to Southern's counsel of record the Agreed Order of Dismissal with Prejudice attached as Exhibit A hereto.

## IV.
## SOUTHERN'S AGREEMENTS AND OBLIGATIONS

Southern agrees, acknowledges, and warrants as follows:

(a)      Within 10 days of receipt from F Street of a fully executed copy of both this Agreement and Exhibit A, Southern will provide F Street with a letter to the escrow agent releasing to F Street all funds currently in escrow pursuant to the Escrow Agreement, being $500,000.00 of principal plus all accrued interest.

(b)      Within 10 days of receipt from F Street of both a fully executed copy of this Agreement and Exhibit A, Southern will pay F Street the additional sum of $275,000.00.

(c)      It will fully cooperate with F Street in obtaining a dismissal with prejudice of the Lawsuit, including the prompt filing with the Court in the Lawsuit of the Agreed Order of Dismissal attached as Exhibit A upon receipt of such signed order from F Street's counsel.

## V.
### RELEASE BY SOUTHERN

On execution of this Agreement, Southern and their successors, assigns and representatives, shall be deemed to release unconditionally, and hereby do release unconditionally as of such date, F Street, its Estate, and their successors, assigns, agents, officers, past and present directors, employees, managers, representatives, attorneys and attorneys of record in the Lawsuit, from any and all claims, obligations, suits, judgments, damages, rights, causes of action, damages and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon or related to any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to F Street, Southern, the Chapter 11 Case, the Lawsuit, the Asset Purchase Agreement (including, but not limited to, any and all indemnity claims arising under the Asset Purchase Agreement), the Escrow Agreement, and including, without limitation, any and all claims under fraudulent conveyance statutes, revocatory actions or similar laws or any cause of action arising under Chapter 5, Title 11 of the United States Code, or related to the Lawsuit or the Chapter 11 Case, or any other document or instrument executed in connection therewith, except that the foregoing release shall not apply to any obligations of F Street under this Agreement. IT IS THE INTENT OF THE SETTLING PARTIES THAT THIS RELEASE SHALL BE THE BROADEST RELEASE POSSIBLE UNDER THE LAW, INCLUDING A RELEASE OF ANY AND ALL CLAIMS AND CAUSES OF ACTION BASED UPON THE SAME OR SUBSTANTIALLY SIMILAR FACTS, ACTS OR OMISSIONS, AND THE PROVISIONS HEREOF SHOULD BE INTERPRETED AND CONSTRUED SO AS TO GIVE EFFECT TO SUCH INTENT.

## VI.
### RELEASE AND COVENANT NOT TO SUE BY F STREET

On the Effective Date of this Agreement F Street and its shareholder, successors, assigns, representatives, principals, officers, directors and board members, shall be deemed to release unconditionally, and hereby do release unconditionally as of such date, Southern, and their successors, assigns, past and present subsidiaries, past and present parents, past and present affiliates (including, but not limited, to Dean Southwest, LLC and Suiza Dairy Group Inc.), past and present agents, past and present directors, past and present officers, past and present employees, past and present managers, past and present representatives, past and present general partners and/or their respective owners (including, but not limited to, Southern Foods Holdings Trust), past and present limited partners (including, but not limited to, SFG Management Limited Liability Company), past and present shareholders, past and present attorneys, and attorneys of record in the Lawsuit, from any and all claims, obligations, suits, judgments, damages, rights, causes of action, damages and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 3

part upon or related to any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to F Street, Southern, the Chapter 11 Case, the Lawsuit, the Asset Purchase Agreement, the Escrow Agreement, and including, without limitation, any and all claims under fraudulent conveyance statutes, revocatory actions or similar laws or any cause of action arising under Chapter 5, Title 11 of the United States Code, or related to the Lawsuit or the Chapter 11 Case, or any other document or instrument executed in connection therewith, except that the foregoing release shall not apply to any obligations of Southern under this Agreement nor shall it apply to any obligations of the parties under the November 30, 1999 Agreement Not to Compete between Southern and H. Lee Richards or the November 30, 1999 Agreement Not to Compete between Southern and Merry Kay Richards. IT IS THE INTENT OF THE SETTLING PARTIES THAT THIS RELEASE SHALL BE THE BROADEST RELEASE POSSIBLE UNDER THE LAW, INCLUDING A RELEASE OF ANY AND ALL CLAIMS AND CAUSES OF ACTION BASED UPON THE SAME OR SUBSTANTIALLY SIMILAR FACTS, ACTS OR OMISSIONS, AND THE PROVISIONS HEREOF SHOULD BE INTERPRETED AND CONSTRUED SO AS TO GIVE EFFECT TO SUCH INTENT.

**Covenant Not to Sue.** F Street, on behalf of itself and its shareholder, successors, assigns, principals, officers, directors and board members, hereby covenants to Southern that it will not initiate, commence, participate in, file or otherwise assert or assist in any non-governmental civil prosecution of any action, claim, cause of action, lawsuit, or other proceeding against Southern or any of the entities or individuals released in the immediately preceding paragraph in connection with any claims or causes of action that were raised or could have been raised in the Lawsuit or any aspect thereof; *provided*, that if F Street, or its shareholder, successors, assigns, principals, officers, directors or board members, breaches this covenant not to sue, F Street, such shareholder, successor, assign, principal, officer, director and/or board member, shall be liable to Southern and the entities or individuals released in the immediately preceding paragraph, as applicable, for any and all liability, damages, costs, attorneys' fees, and or injunctive relief or other remedies that Southern or any of the entities or individuals released in the immediately preceding paragraph incurs as a result of such breach. This covenant not to sue is intended to have the broadest application and interpretation possible and specifically prohibits F Street and its shareholder, successors, assigns, principals, officers, directors and board members from engaging in any further actions or other legal proceedings against Southern or any of the entities or individuals released in the immediately preceding paragraph based in any way upon the claims or causes of action in the Lawsuit released or otherwise described in this Agreement, except that the foregoing covenant shall not apply any obligations of the parties under the November 30, 1999 Agreement Not to Compete between Southern and H. Lee Richards or the November 30, 1999 Agreement Not to Compete between Southern and Merry Kay Richards.

## VII.
## REPRESENTATIONS AND WARRANTIES

**Representations and Warranties of F Street.** F Street represents and warrants to Southern as follows:

(a)     F Street has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and any and all other documents required or permitted to be executed or delivered by it in connection with this Agreement and to fulfill its obligations under, and to consummate the transactions contemplated by this Agreement, and no governmental authorizations or other authorizations are required in connection therewith; and

(b)     None of the claims being released have been assigned or transferred to any other person;

(c)     This Agreement constitutes the legal, valid and binding obligation of F Street enforceable in accordance with its terms.

(d)     It currently has in its possession an order dismissing with prejudice all claims of Diego Moreno against Southern, which order bears the original signature of counsel of record for Diego Moreno.

**Representations and Warranties of Southern.** Southern represents and warrants to F Street as follows:

(a)     Southern has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and any and all other documents required or permitted to be executed or delivered by it in connection with this Agreement and to fulfill its obligations under, and to consummate the transactions contemplated by this Agreement, and no governmental authorizations or other authorizations are required in connection therewith; and

(b)     None of the claims being released have been assigned or transferred to any other person;

(c)     This Agreement constitutes the legal, valid and binding obligation of Southern  enforceable in accordance with its terms.

(d)     F Street retains exclusive ownership and control of any and all claims against Mario Castro and any other former customers of F Street with unpaid accounts for invoices prior to December 1, 1999

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 5

## VIII.
## MISCELLANEOUS

All the Settling Parties additionally agree, acknowledge and warrant as follow:

(a) **Consideration.** This Agreement expresses a full and complete receipt, release, compromise and settlement of all liabilities and claims that the Settling Parties asserted against any released person or might have been asserted against any released person, whether known or unknown, arising from the allegations made or that could have been made in Lawsuit, regardless of the adequacy of the consideration given. The mutual consideration the Settling Parties have given to each other shall not operate as an admission of liability on any Settling Party's part or as an estoppel, waiver, or bar with respect to any claims that the Settling Parties to this Agreement may have against any person not released herein.

(b) **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall constitute one and the same document.

(c) **No Duress.** The Settling Parties represent that they have read this Agreement and understand the nature and effect of this Agreement and acknowledge that they have executed this Agreement with advice of counsel, without any duress or coercion. The Settling Parties also understand that if any facts concerning the claims released in this Agreement should be found other than or different from the facts now believed to be true, this Agreement shall remain in full force and effect, notwithstanding.

(d) **Full Integration.** This Agreement represents the entire agreement between the Settling Parties and supersedes all prior understandings and agreements, if any, except as specifically set forth elsewhere in this Agreement. This Agreement may be amended only by a writing signed by all of the Settling Parties. **THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES RELATING TO THIS AGREEMENT.**

(e) **Interpretation.** This Agreement shall be deemed for all purposes to have been prepared by the joint efforts of the Settling Parties and shall not be construed against any one party.

(f) **Texas Law.** This Agreement shall be governed by the internal laws of the State of Texas without regard to principles of conflicts of law.

(g) **Venue.** Venue of any dispute arising under the terms of this Agreement will lie exclusively in the United States District Court for the Southern District of Texas, Brownsville Division.

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 6

(h)  **Notices.**  All notices and other communications required or permitted hereunder shall be in writing and, unless otherwise provided in this Agreement, shall be deemed to have been duly given when delivered in person or by mail or when dispatched by facsimile transfer to the addressee at the address specified below, or such other address as any party from time to time may designate by like notice:

If to F Street:

Doug Purl, President
F Street Investments, Inc.
720 South F Street
Harlingen, Texas 78550

and

Nathaniel Peter Holzer
JORDAN, HYDEN, WOMBLE & CULBRETH, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone (361) 884-5678
Telecopier (361) 888-5555

If to Southern:

Alex Madrazo
Dean Foods Company
2515 McKinney Aveune, Suite 1200
Dallas Texas, 75201

and

Jerry L. Beane
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, TX 75202
Telephone:  (214) 651-4300
Telecopier:  (214) 651-4330

(i)  **Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

(j)  **Survival and Severability.**  All representations, promises, covenants, and warranties contained herein shall survive the execution and delivery of this Agreement and the execution and delivery of any other document or instrument referred to herein. If any term or provision of this Agreement is found by a court of competent jurisdiction to be illegal or unenforceable for any reason, such term or provision may be severed from

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 7

the remaining portions of this Agreement, and the remaining Agreement shall be binding and enforceable.

(k)  **Reasonable Cooperation**  In addition to the acts recited in this Agreement, the Parties agree to perform or cause to be performed, on the Effective Date or reasonably thereafter, any and all such further acts as may be reasonably necessary to consummate the provisions contemplated herein.

(l)  **Amendments**.  No amendment or waiver of any provision of this Agreement nor consent to any departure therefrom shall in any event be effective unless the same shall be in writing and signed by all parties hereto.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement to be effective as of the Effective Date.

F STREET INVESTMENTS, INC.

By: Doug Purl
Its: President

SOUTHERN FOODS GROUP, L.P.
**by its General Partner, SFG Management
Limited Liability Company**

By: Patrick Ford
Its:  CFO/VP, Dean Dairy Group

DEAN FOODS COMPANY f/k/a SUIZA FOODS CORPORATION

By:  Alex Madras
Its:  VP

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| v. | § | CIVIL ACTION B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. | § | |
| AND SUIZA FOODS CORPORATION | § | |

## AGREED ORDER OF DISMISSAL WITH PREJUDICE

Plaintiff F Street Investments , Inc., a Texas Corporation f/k/a Hygeia Dairy

Company ("Plaintiff") and Defendants Southern Foods Group., L.P. and Suiza Foods

Corporation (now Dean Foods Company) (collectively, "Defendants") have announced to

the Court that they have resolved all claims, counterclaims, defenses and causes of action

between and among them.  Accordingly, Plaintiff and Defendants desire and have

requested the dismissal with prejudice of all claims, counterclaims, defenses and causes

of action which were alleged by Plaintiff and Defendants in the above-styled cause of

action.  The Court has considered such request and finds that it is well taken and should

be granted.

IT IS THEREFORE ORDERED that all claims, counterclaims, defenses and

causes of action which were alleged by Plaintiff and Defendants in the above-styled

cause of action are hereby DISMISSED WITH PREJUDICE to the refiling of the same.

It is furthered ORDERED that costs of Court shall be taxed against the party incurring

the same.

SIGNED this _____ day of _____, 2003.


_____
HILDA TAGLE
UNITED STATES DISTRICT JUDGE


AGREED AS TO FORM AND SUBSTANCE:

_____
NATHANIEL PETER HOLZER
State Bar No. 00793971
JORDAN, HYDEN, WOMBLE &
CULBRETH, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 888-555

**ATTORNEYS FOR PLAINTIFF**

_____
JERRY L. BEANE
State Bar No. 01966000
KAY LYNN BRUMBAUGH
State Bar No. 00785152
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202
Telephone: (214) 651-4300
Telecopier: (214) 651-4330

**ATTORNEYS FOR DEFENDANTS**

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. | § | |
| and SUIZA FOODS CORPORATION | § | |

## AFFIDAVIT OF ALISON D. KENNAMER

STATE OF TEXAS            )
                                       )
COUNTY OF CAMERON )

Before me, the undersigned notary public, did on this day appear Alison D. Kennamer, who, being by me duly sworn on oath, did depose and state as follows:

1.      "My name is Alison D. Kennamer.  I am employed as an attorney in the law firm of Rodriguez, Colvin & Chaney, L.L.P.  out of its offices at 1201 East Van Buren, Brownsville, Texas, 78520. I am over the age of 18.   The facts contained herein are true and correct and, except where otherwise indicated, I have personal knowledge of the facts set forth below and, if called as a witness, would be competent to testify to them.

2.      As a part of my job duties, I have served as a counsel of record for Defendants Southern Foods Group, L.P. and Suiza Foods Corporation in the above-styled lawsuit. I served as additional counsel representing these Defendants along with their attorney-in-charge, Mr. Jerry  L. Beane, Strasburger & Price, L.L.P., 901 Main

Street, Suite 4300, Dallas, Texas    75202-3794.    Ms. Kay Lynn Brumbaugh of Strasburger & Price, L.L.P. is also a counsel of record for these Defendants.

3.    As an additional counsel of record for Defendants Southern Foods Group, L.P. and Suiza Foods Corporation in this case, I had been aware that during the Spring of 2003 that the parties were continuing ongoing settlement negotiations, although I did not participate in or keep abreast of each and every day to day activity or conversation of counsel in this case. I have made it a practice to timely review all mail and telefaxes sent to me in the case from the parties and/or the Court.

4.    On May 2, 2003, I received a copy of a letter from Kay Lynn Brumbaugh from Strasburger & Price, L.L.P., my co-counsel representing the Defendants in this case, to the Court.    That letter enclosed an Agreed Order of Dismissal with Prejudice executed by Plaintiffs and Defendants in this matter and asked that the Clerk present that proposed Agreed Order to the Court for possible signature.

5.    On May 12, 2003, I first saw a copy of this Court's Order on Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment, denying Plaintiffs' Motion for Partial Summary Judgment and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. That Order was stamped April 1, 2003 by the United Stated District Clerk and had a handwritten designation of "15" in the upper right-hand corner, but was not received in my office until on or about May 12, 2003. I reviewed the Order for the first time on May 12, 2003, shortly after it was received in my office. "

Further Affiant Sayeth Not.

_____

Subscribed and sworn to before me this __30th__ day of ___June___, 2003.



_____
Notary Public

**Jeannette R. Malburg**
Notary Public, State of Texas
My Commission Expires
**FEBRUARY 26, 2004**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| v. | § | Civil Action B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. AND | § | |
| SUIZA FOODS CORPORATION | § | |

### AFFIDAVIT OF PATRICK FORD

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

PATRICK FORD, being duly sworn, states:

1.    "My name is PATRICK FORD.  I am of sound mind and over the age of eighteen (18) years of age, competent in all respects to make this Affidavit, and, unless otherwise indicated, I have personal knowledge of all facts stated herein and they are true and correct.

2.    I am the Senior Vice President and Chief Financial Officer, Finance, for Dean Dairy Holdings, LLC and Suiza Dairy Group, Inc.  I was formerly the Chief Financial Officer of Southern Foods Group, L.P.  I am familiar with the claims and defenses of the parties in this lawsuit and am familiar with the settlement negotiations in this case and have been personally involved in the decision-making process within Southern Foods Group, L.P. and Suiza Foods Corporation (now Dean Foods) with respect to settlement on behalf of the defendants.  I was aware of the November 2002 mediation in this case, was consulted with from time to time regarding settlement negotiations, and was aware that preliminary agreement was reached at the November 2002 mediation regarding all claims, subject to reaching agreement on an arbitration process for resolving F Street's commercial accounts receivable claim.

3.    In mid-March, 2003, when the parties still had been unable to reach agreement regarding the procedures for arbitrating the accounts receivable claims, after consultation with

**AFFIDAVIT OF PATRICK FORD – Page 1**

799100.1/SP2/75935/0208/070103

our in-house counsel Alex Madrazo and Eddie Tollison, Chief Financial Officer for Southern Foods Group, L.P., and others in management for Southern Foods and Dean Foods, defendants authorized our attorneys to request a proposal from F Street to settle the remaining disputed claim – the accounts receivable claim – for a lump-sum amount.

4.   It is my understanding that F Street's response to defendants' request regarding the accounts receivable claim was a payment in the amount of $200,000. Ultimately, I authorized payment in this amount and it is my understanding that defendants' acceptance of the $200,000 proposal from F Street was communicated to counsel for F Street on or about April 3, 2003. The settlement agreement was not finalized and executed by me until April 30, 2003. The defendants have paid F Street $200,000 for the accounts receivable claim.

5.   Had defendants known that the Court had entered an order in defendants' favor on F Street's accounts receivable claim prior to the acceptance of F Street's $200,000 proposal on the accounts receivable claim, defendants would never have accepted F Street's proposal. Knowledge of the Court's order would have been a material fact and would have placed defendants in an entirely different position with respect to negotiating settlement of the accounts receivable claim."

FURTHER AFFIANT SAYETH NOT

_____
PATRICK FORD

SUBSCRIBED AND SWORN TO BEFORE ME, a notary public, on this 2nd day of July, 2003.

My Commission Expires:

_____
Notary Public in and for
The State of Texas



RUTH SANCHEZ
MY COMMISSION EXPIRES
January 28, 2004

Service: **Get by LEXSEE®**
Citation: **1940 Mich. LEXIS 650**

*295 Mich. 349, \*; 294 N.W. 707, \*\*;*
*1940 Mich. LEXIS 650, \*\*\**

FARHAT *v.* RASSEY.

Docket No. 27

Supreme Court of Michigan

295 Mich. 349; 294 N.W. 707; 1940 Mich. LEXIS 650

Submitted June 5, 1940. Calendar No. 41,106.
Decided November 13, 1940.

**CORE TERMS:** settlement, restitution, rescission, consummated, doubtful, decree, negotiations, compromise agreement, state of mind, dissolution, partnership, contracted, accounting, consequent, afternoon, rescinded, effected, relieved, bargain, rescind, morning

**HEADNOTES:  [\*\*\*1]**

1. COMPROMISE AND SETTLEMENT -- ERRONEOUS BASIC ASSUMPTION OF FACT.

Agreement between parties of suit for dissolution of a partnership and accounting of assets whereby plaintiff received $1,400 for his share was properly avoided by plaintiff where consummated in afternoon of day on which trial court had in the forenoon filed an opinion whereby plaintiff was found entitled to $3,933.33 as share of assets totalling $11,297.68, where defendants' attorney in good faith stated the case had not yet been decided, there being an erroneous assumption of fact upon which the settlement had been based.

2. COMPROMISE AND SETTLEMENT -- RESCISSION -- MISTAKE.

Parties are to be relieved of their bargain in effecting a compromise agreement of a dispute between them where they contracted in good faith on assumptions not believed to have been doubtful, but which were in fact erroneous.

3. COMPROMISE AND SETTLEMENT -- RESCISSION -- ASSUMPTION OF RISK OF MISTAKE.

A person is not entitled to rescind a transaction with another if, by way of compromise or otherwise, he agreed with the other to assume, or intended to assume, the risk of a mistake for which otherwise he would be entitled  [\*\*\*2]  to rescission and consequent restitution.

4. COMPROMISE AND SETTLEMENT -- RESCISSION -- ASSUMPTION OF RISK OF MISTAKE -- INTENT.

Compromise of differences between parties to a suit at a figure different from that arrived at by court before whom case was then pending in its opinion filed a few hours prior to consummation of compromise agreement effected in ignorance of the court's action and in the belief it would be some time before a decision would be rendered may be rescinded as the parties cannot be held to have assumed, or to have intended to assume by their compromise, that the case had been decided.

When mistake makes a contract voidable, see 2 Restatement, Contracts, § 502.

Mistake with reference to state of mind not in accord with the facts, see Restatement, Restitution, § 6.

Assumption of risk of mistake, see Restatement, Restitution, § 11 (3).

**SYLLABUS:** Appeal from Genesee; Gadola (Paul V.), J. Submitted June 5, 1940. (Docket No. 27, Calendar No. 41,106.) Decided November 13, 1940.

Bill by Abraham W. Farhat against Elias Rassey, Sam Zerka, and Jacob Zerka, individually and trading under the firm name of Zerka-Rassey & Company, for dissolution of a copartnership **[\*\*\*3]** and an accounting. Cross bill by named defendants against plaintiff for an accounting. Decree for plaintiff. Defendants appeal. Affirmed.

**COUNSEL:** *Ralph M. Bahna* and *Abner Dilley,* for plaintiff.

*Blackney & Sheldon (Toy & Newman,* of counsel), for defendants.

**OPINIONBY:** BUTZEL, J.

**OPINION: [\*350]  [\*\*707]** BUTZEL, J. Plaintiff filed a bill for the dissolution of a partnership and for an accounting. The case was submitted on the proofs in December, 1939, and on January 18, 1940, at about 9 o'clock in the morning, the trial court filed a written opinion in which he found that plaintiff was entitled to $3,933.33 as his share of the assets of the copartnership which totalled $11,297.68. On the same morning, the attorney for defendants called plaintiff's attorney and suggested that defendants would pay $1,400 to settle the case if an agreement could be effected that day. Plaintiff's attorney went to Flint, arriving there about 4 o'clock in the afternoon, and a settlement was made, reduced to writing, signed by the parties, and a check for the agreed amount of $1,400 was delivered to plaintiff's attorney. Immediately upon receiving the opinion of the trial court, plaintiff's **[\*\*\*4]** attorney filed a motion to repudiate the settlement and for a decree on the findings of the trial court. The trial court declined to abide by the settlement, and a decree was entered in accordance with his opinion.

**[\*351]** It is conceded that at the time the settlement was actually made, the trial court had already filed his opinion. It appears that defendants' attorney stated that the case had not yet been decided, which statement was in fact untrue; his good faith **[\*\*708]** is unchallenged. We accept as true the statement in his affidavit that he had no knowledge of the decision at the time the settlement was consummated, and we shall assume that such knowledge on the part of defendants and their counsel was likewise wanting.

The trial court was correct in holding that plaintiff may avoid the settlement. The basic assumptions upon which the settlement rested were wrong in fact. The state of mind of all the parties was not in accord with the facts (Restatement, Restitution, § 6). The parties assumed that the case had not yet been determined and believed that a decision would not be forthcoming for several weeks. There can be no question but that these fundamental **[\*\*\*5]** facts induced the compromise, and their absolute nonexistence was the starting point of the settlement contract. Having contracted on the faith of these assumptions not believed to have been doubtful, but which were in fact erroneous, the parties are to be relieved from their bargain. 5 Williston on Contracts (Rev. Ed.), p. 4332, § 1543; Restatement, Contracts, § 502; Restatement, Restituion, § 11, comment c; *Gibson* v. *Pelkie,* 37 Mich. 380; *Sherwood* v. *Walker,* 66 Mich. 568 (11 Am. St. Rep. 531); *State Savings Bank of Ann Arbor* v. *Buhl,* 129 Mich. 193 (56 L.R.A. 944); *Richardson Lumber Co.* v. *Hoey,* 219 Mich. 643; *Kutsche* v. *Ford,* 222 Mich. 442; *Grymes* v. *Sanders,* 93 U.S. 55. The situation before us is to be distinguished from cases where there is a mistake as to a doubtful,

disputed, unassumed fact leading to the compromise. "With respect to any matter not made a basic assumption of the contract the parties take their chances." (5 Williston on **[*352]** Contracts (Rev. Ed.), p. 4332, § 1543.) In Restatement, Restitution, § 11(1), it is said:

"A person is not entitled to rescind a transaction with another if, by way of compromise **[***6]** or otherwise, he agreed with the other to assume, or intended to assume, the risk of a mistake for which otherwise he would be entitled to rescission and consequent restitution."

See, also, *Lamb* v. *Rathburn,* 118 Mich. 666; *Kirl* v. *Zinner,* 274 Mich. 331; *Story* v. *Page,* 280 Mich. 34; *Welch* v. *Citizens Mutual Auto Ins. Co.,* 285 Mich. 82; *Mayor* v. *Sanders,* 286 Mich. 45. In the instant case, while the parties may have assumed the risk of any mistake in connection with the anticipated outcome of the proceeding on its merits and the time in the future when the decision would be rendered, they were acting under a basic mutual mistake in assuming that the case had not been decided at the time they negotiated and consummated their settlement. All mistakenly felt certain that the case had not yet been determined, and all joined in the belief that it would be several weeks before a decision would be rendered. They cannot be held to have assumed, or to have intended to assume by their compromise, the risk of being mistaken in these basic regards. For such mistake, the settlement, like any other contract, may be rescinded. Restatement, Restitution, § **[***7]** 11, comment c; 5 Williston on Contracts (Rev. Ed.) pp. 4332, 4333, § 1543. Knowledge that the case had already been determined would have put their negotiations on a different footing, if negotiations there would have been at all.

The decree is affirmed. Costs to plaintiff.

BUSHNELL, C.J., and SHARPE, BOYLES, CHANDLER, NORTH, McALLISTER, and WIEST, JJ., concurred.

Service: **Get by LEXSEE®**
Citation: **1940 Mich. LEXIS 650**
View: Full
Date/Time: Tuesday, July 1, 2003 - 6:09 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.