*19*

United States District Court
Southern District of Texas
FILED

JUL 1 8 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| V. | § | CIVIL ACTION "B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. | § | |
| AND SUIZA FOODS CORPORATION | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO SET ASIDE SETTLEMENT AGREEMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Plaintiff, F STREET INVESTMENTS, INC., A TEXAS CORPORATION F/K/A HYGEIA DAIRY CORPORATION, and files this it's Response to Defendants' Motion to Set Aside Settlement Agreement. This Motion and the accompanying brief are supported by the attached Appendix containing the Affidavit of Nathaniel Peter Holzer.

I.

### Statement of the Issues Before the Court

Two (2) main issues are before the Court as a result of Defendant's Motion to Set Aside Settlement Agreement. The first concerns the Court's continuing jurisdiction (or, stated more accurately, the lack thereof) to hear such a motion and provide the relief requested. The second concerns whether the settlement agreement previously concluded and the dismissal entered by this Court should be set aside for reasons assigned by the Defendants as a "mutual mistake of a material

fact." What the Defendants actually seek (but do not identify as such) is a vacation of the dismissal order and the settlement agreement pursuant to Rule 60(b)(1).

## II.

## Factual Background

For the most part, Plaintiff agrees with the factual background set forth by the Defendants in their Motion. Although the Plaintiff has some dispute with some of the facts listed by the Defendants, the following dates are contained in the Defendant's Motion and are undisputed:

| | |
|---|---|
| October 30, 2002 | Parties reach basic agreement to settle all claims subject to reaching agreement to arbitrate accounts receivable claim. |
| March 17, 2003 | Defense counsel requests that Plaintiff's counsel present a lump sum settlement figure to avoid arbitration costs and time. |
| March 18, 2003 | Plaintiff's counsel responds with demand for settlement |
| March 31, 2003 | Court issues order granting portions of Defendants' summary judgment without knowledge of either party. |
| April 3, 2003 | Defense counsel accepts Plaintiff's demand to settle. |
| April 30, 2003 | All settlement documents executed and finalized. |
| May 9, 2003 | Court enters order of dismissal. |
| May 12, 2003 | Defense counsel learns of summary judgment order. |
| July 7, 2003 | Defendants file a Motion to Set Aside Settlement Agreement and Supporting Brief. |

It is undisputed that at the time of the Defendants' acceptance of the Plaintiff's demand to settle this case, neither party or counsel was aware of this Court's prior decision concerning Defendants' summary judgment. See Affidavit of Peter Holzer attached as EXHIBIT 1.

Plaintiff does dispute Defendant's statement that this Court retains jurisdiction "over any settlement that may exist." As the Court's order evidences, the Court retained jurisdiction to "enforce" any settlement that may exist. The Defendants' motion does not seek such an enforcement.

III.

## ARGUMENT
### No Jurisdiction

The dismissal in this case issued pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), which provides for dismissal "by filing a stipulation of dismissal signed by all parties who have appeared in the action," and causes that dismissal to be with prejudice if the stipulation so specifies. The Agreed Order of Dismissal With Prejudice submitted by the parties on or about April 30, 2003, evidences such a stipulation of dismissal by the parties. Neither the Rule nor any provision of law provides for jurisdiction of the Court over disputes arising out of an agreement that produces that stipulation. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 378 (1994). In, *Kokkonen* the defendant relied upon the doctrine of ancillary jurisdiction, which recognizes federal courts' jurisdiction over some matters that are incidental to other matters properly before them. As the *Kokkonen* court stated, the concept of limited federal jurisdiction does not permit a court to assert ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court. *Id.* at 380. The *Kokkonen* court did foresee, however, a situation wherein the parties obligations to comply with the terms of the settlement agreement had been made part of the order of dismissal - either by separate provision or by incorporating the terms of the settlement agreement in the order. In such an event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist. *Id.* at 381.

That is not, however, the case here. This Honorable Court specifically retained jurisdiction to "enforce" any settlement that may exist. That limited statement of ancillary jurisdiction does not trigger the Court's jurisdiction in this case under these facts. The Defendants make no argument that the Plaintiff has breached any obligations under the settlement agreement because it has not. If anything, any breach being contemplated is being contemplated on the part of the Defendants.

### No Mutual Mistake

The sole basis for Defendants' attempt to rescind the settlement agreement between the parties is an assertion of mutual mistake. Under the doctrine of mutual mistake, an agreement may be avoided where the parties contracted under a misconception or mistake of a material fact. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990). The party seeking to avoid the contract has the burden of proof to show mutual mistake. As noted by the court in *Williams:*

> The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release.
>
> *   *   *
>
> The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements. However, in narrow circumstances a party may raise a fact issue for the trier of fact to set aside a release under the doctrine of mutual mistake. *Id.* at 264-65.

An error in predicting a future fact known to be uncertain is not the kind of mistake which will relieve a party from a contract. *Barker v. Roelke,* 105 S.W.3d 75, 84 (Tex. App. –Eastland 2003, no pet.); *Green v. Morris,* 43 S.W.3d 604, 607 (Tex. App. –Waco 2001, no pet.). The issue here: Did the parties' ignorance as to the Court's order on Defendants' summary judgment give rise to the kind of mistake which would relieve a party from a contract?

The Defendants rely heavily on *Farhat v. Rassey,* 294 N.W. 707 (Mich. 1940) for the proposition that finalization of a settlement agreement after a court has entered a judgment and before counsel for the parties learns of the judgment is sufficient to warrant a rescission based upon mutual mistake.  Defendants, however, point out authority to the contrary which the Plaintiff believes is dispositive.

In *Harbor Ins. Co. v. Stokes,* 45 F.3d. 499 (D.C. Cir. 1995), the district court granted judgment for the defendant, rejecting the plaintiffs' defense of mutual mistake of fact, after the court had decided a lawsuit in favor of the plaintiffs a day before the parties settled the case.  In *Harbor Ins.,* the parties had begun settlement negotiations in March 1992.  By the beginning of June, 1992, the parties had come very close to settlement, but could not bridge a final gap.  After several weeks at an impasse, the defendant changed negotiators.  After confirming the plaintiff's demand for settlement, the defendant called plaintiff's counsel and offered to settle on the plaintiff's terms.  The parties concluded their settlement contract on June 26.  Unbeknownst to both parties, the court had entered an order on Thursday, June 25, granting the plaintiff's motion for summary judgment.  On June 29, both parties received notice of the decision in the mail.  The plaintiff immediately contacted defense counsel and repudiated the settlement contract.[1]

The *Harbor Ins.* court explained that under the doctrine of mutual mistake, "a contract may be rescinded if the contracting parties entertained a material mistake of fact that went to the heart of

---

[1] Defendants distinguish *Harbor Ins.* from this case by arguing that the parties in that case had concluded their settlement agreement before either party had notice of the Court's order.  Contrary to the Defendant's assertions, the settlement agreement between the parties here had been concluded and all that remained was the preparation and execution of the written agreement.  The Defendant appears to take the position that an oral agreement to settle is not sufficient when applying the doctrine of mutual mistake.  However, oral settlements are binding, especially when later reduced to writing and executed.  See *Macktal v. Secretary of Labor,* 923 F.2d 1150, 1157 (5th Cir. 1991); *Strange v. Gulf & South American Steamship Co.,* 495 F.2d 1235, 1236 (5th Cir. 1974); *Cantu v. Moore,* 90 S.W.3d 821, 824 (Tex. App. – San Antonio 2002, pet. denied).

their bargain." *Id.* at 501. The court assumed *arguendo* that the parties mistake - as to whether the

court had made a final disposition of the underlying action - was mutual, material, and went to the

heart of the bargain. But as the court explained, while the doctrine essentially allows a party to avoid

a contract - and thus, the risk of a particular mistake, it is necessarily inapplicable if the court finds

that the party bore the risk. *Id.;* Restatement (Second) of Contracts §§152, 154 (1981). The *Harbor*

*Ins.* court quoted the comments to §154(b) of the Restatement:

> c. *Conscious ignorance.* Even though the mistaken party did not agree to bear the
> risk, he may have been aware when he made the contract that his knowledge with
> respect to the facts to which the mistake relates was limited. If he was not only so
> aware that his knowledge was limited but undertook to perform in the face of that
> awareness, he bears the risk of the mistake. It is sometimes said in such a situation
> that, in a sense, there was not mistake but "conscious ignorance." Restatement
> (Second) of Contracts §154 cmt. c. (1981).

The *Harbor Ins.* court explained that the Restatement quite logically set "conscious

ignorance" in a section explicitly addressing risk allocation. Every time parties enter a contract, they

act with incomplete information. They make judgments about the desirability of acquiring (and

waiting for) additional information, and of creating specific contractual provisions to handle

particular eventualities. Where they have been explicitly concerned about an issue, but decide to

press forward without further inquiry or explicit provision, it is reasonable to suppose that they

intend the contract to dispose of the risk in question, i.e., to bar any reopening at the behest of the

party who, it turns out, would have done better without the contract. *Id.* at 502.

In *Harbor Ins.*, in arguing that the mistake concerned a basic assumption underlying the

contract, the plaintiff urged that his key concern was the timing of the judgment. It was obvious that

he was ignorant of when the decision would issue (or had issued), and that he was fully aware of his

ignorance. *Id.* at 502-503. The court observed:

It might be argued on Stokes behalf that although he was consciously ignorant of the *range* of possible times when judgment might issue, he never consciously entertained the thought that the court had *already* acted. But that eventuality was simply the limiting case of the known range of possibilities, and we do not think Stokes can carve the range up into diminutive segments, asserting unconscious ignorance of the one that happened to materialize. After all, if timing was Stokes' driving concern, a decision of this court the day *after* the settlement would have equally falsified his and Harbor's assumption that the appeal was likely to drag on for another year, and would have made Stokes kick himself just as harshly for the misfortune of having settled. *Id.* at 503.

The *Harbor Ins.* court concluded that the settlement should be upheld based upon an inference as to risk allocation, not on a finding of negligence or other fault. They explicitly disagreed with the reasoning in *Farhat v. Rasse*, explaining that the Michigan court seemed to think that the parties had not allocated the risk of pre-settlement judicial disposition. *Id.* at 503. The *Harbor Ins.* court, however, saw the risk as nestled firmly within the basic risk as to outcome *and* timing, and thus, upheld the settlement agreement in question.

Further support for the reasoning in *Harbor Ins.* is found in *Hillcrest Realty Co. v. Gottlieb*, 234 A.D.2d. 270, 651 N.Y.S. 2d. 55 (1996). In this case both parties had appealed a prior judgment in August, 1993. The parties entered into settlement negotiations, and reached a tentative agreement by June, 1994. The appeal was scheduled on October 7, 1994, and the decision and order in favor of the defendant was handed down on October 24, 1994. The parties were unaware that the court had scheduled the appeal for argument, and were also unaware that it had been decided. In December, 1994, the parties executed a formal stipulation of settlement whereby the defendants agreed to pay the plaintiffs. After learning of the decision and order on appeal, the defendant moved to vacate the settlement, arguing that it had been entered into under a mistake of fact. The trial court denied such motion and an appeal followed.

The *Hillcrest* court explained that the record demonstrated that the defendant had made no inquiry as to the status of the appeal for almost three months preceding the December 12, 1994, stipulation of settlement. By simple inquiry to the court, it was within the defendant's ability to ascertain the result of the appeal before the settlement was executed. The assumption that no decision had been rendered as of December 12, 1994, did not constitute a mistake of facts sufficient to avoid the agreement. *Id.* at 271. At the time the case was settled, the defendant bore the risk of being mistaken as to who would win or lose the appeal and as to when it would be decided. Accordingly, the defendant could not rescind the agreement based upon the latter-acquired knowledge that the risk turned out to be ill-advised. "Equity will not relieve a party of its obligations under a contract merely because subsequently, with benefit of hindsight, it appears to have been a bad bargain." *Id.*

In this case, the defendants anchor their arguments for mutual mistake on accusations that the clerk's office failed to provide them timely notice of the court's ruling. It is true that the clerk of the court is required to serve notice of the entry of an order or judgment by mail to the parties immediately upon its entry. Nevertheless, Rule 77(d) provides that lack of notice by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure. Although this latter statement applies to appeal, it is clear that implicit in this rule is the notion that parties have a duty to inquire periodically into the status of their litigation. *Latham v. Wells Fargo Bank*, 987 F.2d. 1199, 1201 (5th Cir. 1993). Indeed, the committee notes to Rule 77 state:

> Notification by the clerk is merely for the convenience of litigants . . . It would, therefore, be entirely unsafe for a party to rely on absence of notice from the clerk of

the entry of a judgment, or to rely on the adverse parties' failure to serve notice of the entry of a judgment.

Texas law also provides that the right to rescind a contract may be lost by inaction and conduct showing an affirmation of the contract after knowledge of the facts which are grounds for rescission. *Barker*, 105 S.W.3d at 84. It is undisputed that Defendants learned of this summary judgment order on May 12, 2003. The Defendants' motion was filed eight (8) weeks after such revelation. Such delay does not support Defendants' claims that the delay in receipt of notice had serious adverse consequences to the Defendants.

A reading of the settlement agreement executed by the parties is further evidence that the risk borne by the parties encompassed all facts, either known or unknown. That very wording is contained in Paragraph V. of the documents. Implicit in such wording was the risk that the Court had previously made a decision on the Defendants' motion for summary judgment. If the Defendants had desired a settlement agreement to be contingent upon the Court having ruled or shortly ruling on the motion, it very well could have included such language in the settlement contract.

In conclusion, in settling this case, both parties bore the risk of being mistaken as to who would win or lose the defendant's motion for summary judgment and as to when it would be decided. Such risks are borne by both parties equally and are inherent in any settlement agreement.

IV.

## Conclusion

For the reasons stated above, Plaintiff requests that this Court decline to accept jurisdiction over the Defendants' attempt to set aside the prior settlement agreement and dismissal. In the alternative, Plaintiff requests the Court deny the Defendants' Motion to Set Aside the Settlement Agreement, confirming the Court's prior order of Dismissal entered on May 9, 2003.

Respectfully submitted,

SCHAUER & SIMANK, P.C.
615 N. Upper Broadway, Suite 2000, MSC-159
Corpus Christi, TX 78477
361-884-2800
361-884-2822 (FAX)

By: _____
        Ronald A. Simank
        State Bar No. 18359400
        Federal Admission No. 0359
        G. Don Schauer
        State Bar No. 17733298
        Federal Admission No. 7641

ATTORNEYS FOR PLAINTIFF,
F STREET INVESTMENTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2003, a true and correct copy of the foregoing was forwarded to the following via first class mail and/or Federal Express mail:

Kay Lynn Brumbaugh
STRASBURGER & PRICE, LLP
902 Main Street, Suite 4300
Dallas, Texas 75202

Ronald A. Simank

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

F STREET INVESTMENTS, INC.,    §
A TEXAS CORPORATION,    §
F/K/A HYGEIA DAIRY COMPANY,    §
    §
VS.    §    CIVIL ACTION B-02-001
    §
SOUTHERN FOODS GROUP, L.P.    §
AND SUIZA FOODS CORPORATION    §

## AFFIDAVIT OF NATHANIEL PETER HOLZER

1.    My name is Nathaniel Peter Holzer. I am over the age of 18 years. I am an attorney

with the law firm of Jordan, Hyden, Womble & Culbreth, P.C. I have personal knowledge of the

facts set forth below and I am fully competent to make this affidavit.

2.    I served as lead attorney for F. Street Investments, Inc. in the above-styled lawsuit.

I was the only attorney involved in settlement negotiations on behalf of the Plaintiff. At a mediation

on October 30, 2002, the Plaintiff and the Defendant reached an agreement to settle all claims

involving the parties subject to reaching a further agreement to arbitrate the Plaintiff's claims against

the Defendant involving the amount owed for commercial accounts receivable.

3.    On March 17, 2003, I was requested by Kay Lynn Brumbaugh, one of the attorneys

representing the Defendant, to make a lump-sum settlement demand as it concerned the accounts

receivable claim and to thereby avoid the cost, expense and uncertainty involving the arbitration.

4.    On March 18, 2003, on behalf of the Plaintiff, I sent an email to Ms. Brumbaugh

informing her of the likely value of the Plaintiff's claim involving the commercial accounts

receivables and invited her to make a counter-offer based on this amount. She did and thereafter the

parties exchanged settlement offers. On the morning of April 3, 2003, Ms. Brumbaugh told me that

the Defendant had accepted the Plaintiff's latest settlement demand of $200,000.00. When Ms.

Brumbaugh notified me of Defendant's acceptance of the Plaintiff's latest offer, I had no knowledge of the Court's decision regarding the summary judgment. At that time, I considered the entire case settled and so informed my client's President.

     5.      Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement executed by the Plaintiff and Defendant.

     Further Affiant saith not.



_____
Nathaniel Peter Holzer


     SWORN AND SUBSCRIBED on this the ___17th___ day of ___July___ _____, 2003.

STEPHANIE A SILVA
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-09-2006

_____
Notary Public, State of Texas

44002

## COMPROMISE SETTLEMENT AGREEMENT AND RELEASE

This COMPROMISE SETTLEMENT AGREEMENT AND RELEASE ("**Agreement**") is made and entered into by and among all the following parties hereto (collectively "**Settling Parties**"):

(a) F-Street Investments, Inc. f/k/a F Street Dairy Company, a Texas Corporation with its principal office in Harlingen, Cameron County, Texas ("**F Street**").

(b) Southern Foods Group, L.P., a Delaware Limited Partnership, and Dean Foods Company f/k/a Suiza Foods Corporation, a Delaware corporation (collectively "**Southern**").

Southern denies any liability to F Street. However, the Settling Parties being mutually desirous of putting an end to all disputes between them and wishing to settle all their differences with respect thereto, and in order to avoid the time and expense associated with protracted litigation, hearings, and trials, all of which is acknowledged by the Settling Parties to be valid and binding consideration for this Agreement, and in consideration of the benefits to accrue to each of the Settling Parties by virtue of this Agreement, the Settling Parties hereto agree as follows:

## I.
## DEFINITIONS

**Effective Date** when used in this Agreement shall mean April 10, 2003.

## II.
## RECITALS

A.    F Street began operations in south Texas in 1927. In about 1993 F Street management decided to sell F Street. Southern owns a dairy processing plant in San Antonio where it produces dairy products under its Oak Farms label. In about 1994 Southern began doing business in the Rio Grande Valley.

B.    In mid-October of 1999, Southern purchased the assets of F Street for approximately $9 million. The sale was closed with an effective date of November 30, 1999. The sale was documented by an Asset Purchase Agreement and a related Escrow Agreement.

C.    On March 15, 2000, F Street filed for bankruptcy. Its chapter 11 Plan was confirmed on November 5, 2002, and the plan vested F Street with full ownership of any and all claims against Southern.

D.    In November 2001, F Street filed Cause No. 2001-11-5-52-G, styled *F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company vs. Southern*

788309 3/SP2/75935/0208/041803


RECEIVED
JUL 11 2003

*Foods Group, L.P. and Suiza Foods Corporation,* in the District Court for Cameron County, Texas, 404th Judicial District (the "State Court Case"). The State Court Case was removed to the United States District Court for the Southern District of Texas, Brownsville Division, on or about January 3, 2002 and assigned Civil Action No. B-02-001; still bearing the style, *F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company vs. Southern Foods Group, L.P. and Suiza Foods Corporation* (the "**Lawsuit**").

E.    The Settling Parties conducted discovery and each filed a motion for summary judgment. The Settling Parties engaged in mediation and subsequent negotiations, resulting in this Agreement.

## III.
## F STREET'S AGREEMENT AND OBLIGATIONS

F Street agrees, acknowledges, and warrants as follows:

(a)    On or before the Effective Date it will provide Southern with an agreed Order bearing the original signature of counsel for Diego Moreno dismissing with prejudice all claims of Diego Moreno against Southern Foods.

(b)    It will fully cooperate with Southern in obtaining a dismissal with prejudice of the Lawsuit, including but not limited to causing its attorney of record to execute and promptly return to Southern's counsel of record the Agreed Order of Dismissal with Prejudice attached as Exhibit A hereto.

## IV.
## SOUTHERN'S AGREEMENTS AND OBLIGATIONS

Southern agrees, acknowledges, and warrants as follows:

(a)    Within 10 days of receipt from F Street of a fully executed copy of both this Agreement and Exhibit A, Southern will provide F Street with a letter to the escrow agent releasing to F Street all funds currently in escrow pursuant to the Escrow Agreement, being $500,000.00 of principal plus all accrued interest.

(b)    Within 10 days of receipt from F Street of both a fully executed copy of this Agreement and Exhibit A, Southern will pay F Street the additional sum of $275,000.00.

(c)    It will fully cooperate with F Street in obtaining a dismissal with prejudice of the Lawsuit, including the prompt filing with the Court in the Lawsuit of the Agreed Order of Dismissal attached as Exhibit A upon receipt of such signed order from F Street's counsel.

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 2

## V.
## RELEASE BY SOUTHERN

On execution of this Agreement, Southern and their successors, assigns and representatives, shall be deemed to release unconditionally, and hereby do release unconditionally as of such date, F Street, its Estate, and their successors, assigns, agents, officers, past and present directors, employees, managers, representatives, attorneys and attorneys of record in the Lawsuit, from any and all claims, obligations, suits, judgments, damages, rights, causes of action, damages and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon or related to any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to F Street, Southern, the Chapter 11 Case, the Lawsuit, the Asset Purchase Agreement (including, but not limited to, any and all indemnity claims arising under the Asset Purchase Agreement), the Escrow Agreement, and including, without limitation, any and all claims under fraudulent conveyance statutes, revocatory actions or similar laws or any cause of action arising under Chapter 5, Title 11 of the United States Code, or related to the Lawsuit or the Chapter 11 Case, or any other document or instrument executed in connection therewith, except that the foregoing release shall not apply to any obligations of F Street under this Agreement. IT IS THE INTENT OF THE SETTLING PARTIES THAT THIS RELEASE SHALL BE THE BROADEST RELEASE POSSIBLE UNDER THE LAW, INCLUDING A RELEASE OF ANY AND ALL CLAIMS AND CAUSES OF ACTION BASED UPON THE SAME OR SUBSTANTIALLY SIMILAR FACTS, ACTS OR OMISSIONS, AND THE PROVISIONS HEREOF SHOULD BE INTERPRETED AND CONSTRUED SO AS TO GIVE EFFECT TO SUCH INTENT.

## VI.
## RELEASE AND COVENANT NOT TO SUE BY F STREET

On the Effective Date of this Agreement F Street and its shareholder, successors, assigns, representatives, principals, officers, directors and board members, shall be deemed to release unconditionally, and hereby do release unconditionally as of such date, Southern, and their successors, assigns, past and present subsidiaries, past and present parents, past and present affiliates (including, but not limited, to Dean Southwest, LLC and Suiza Dairy Group Inc.), past and present agents, past and present directors, past and present officers, past and present employees, past and present managers, past and present representatives, past and present general partners and/or their respective owners (including, but not limited to, Southern Foods Holdings Trust), past and present limited partners (including, but not limited to, SFG Management Limited Liability Company), past and present shareholders, past and present attorneys, and attorneys of record in the Lawsuit, from any and all claims, obligations, suits, judgments, damages, rights, causes of action, damages and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 3

part upon or related to any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to F Street, Southern, the Chapter 11 Case, the Lawsuit, the Asset Purchase Agreement, the Escrow Agreement, and including, without limitation, any and all claims under fraudulent conveyance statutes, revocatory actions or similar laws or any cause of action arising under Chapter 5, Title 11 of the United States Code, or related to the Lawsuit or the Chapter 11 Case, or any other document or instrument executed in connection therewith, except that the foregoing release shall not apply to any obligations of Southern under this Agreement nor shall it apply to any obligations of the parties under the November 30, 1999 Agreement Not to Compete between Southern and H. Lee Richards or the November 30, 1999 Agreement Not to Compete between Southern and Merry Kay Richards. IT IS THE INTENT OF THE SETTLING PARTIES THAT THIS RELEASE SHALL BE THE BROADEST RELEASE POSSIBLE UNDER THE LAW, INCLUDING A RELEASE OF ANY AND ALL CLAIMS AND CAUSES OF ACTION BASED UPON THE SAME OR SUBSTANTIALLY SIMILAR FACTS, ACTS OR OMISSIONS, AND THE PROVISIONS HEREOF SHOULD BE INTERPRETED AND CONSTRUED SO AS TO GIVE EFFECT TO SUCH INTENT.

**Covenant Not to Sue**. F Street, on behalf of itself and its shareholder, successors, assigns, principals, officers, directors and board members, hereby covenants to Southern that it will not initiate, commence, participate in, file or otherwise assert or assist in any non-governmental civil prosecution of any action, claim, cause of action, lawsuit, or other proceeding against Southern or any of the entities or individuals released in the immediately preceding paragraph in connection with any claims or causes of action that were raised or could have been raised in the Lawsuit or any aspect thereof; *provided*, that if F Street, or its shareholder, successors, assigns, principals, officers, directors or board members, breaches this covenant not to sue, F Street, such shareholder, successor, assign, principal, officer, director and/or board member, shall be liable to Southern and the entities or individuals released in the immediately preceding paragraph, as applicable, for any and all liability, damages, costs, attorneys' fees, and or injunctive relief or other remedies that Southern or any of the entities or individuals released in the immediately preceding paragraph incurs as a result of such breach. This covenant not to sue is intended to have the broadest application and interpretation possible and specifically prohibits F Street and its shareholder, successors, assigns, principals, officers, directors and board members from engaging in any further actions or other legal proceedings against Southern or any of the entities or individuals released in the immediately preceding paragraph based in any way upon the claims or causes of action in the Lawsuit released or otherwise described in this Agreement, except that the foregoing covenant shall not apply any obligations of the parties under the November 30, 1999 Agreement Not to Compete between Southern and H. Lee Richards or the November 30, 1999 Agreement Not to Compete between Southern and Merry Kay Richards.

## VII.
## REPRESENTATIONS AND WARRANTIES

**Representations and Warranties of F Street.** F Street represents and warrants to Southern as follows:

(a)     F Street has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and any and all other documents required or permitted to be executed or delivered by it in connection with this Agreement and to fulfill its obligations under, and to consummate the transactions contemplated by this Agreement, and no governmental authorizations or other authorizations are required in connection therewith; and

(b)     None of the claims being released have been assigned or transferred to any other person;

(c)     This Agreement constitutes the legal, valid and binding obligation of F Street enforceable in accordance with its terms.

(d)     It currently has in its possession an order dismissing with prejudice all claims of Diego Moreno against Southern, which order bears the original signature of counsel of record for Diego Moreno.

**Representations and Warranties of Southern.** Southern represents and warrants to F Street as follows:

(a)     Southern has full power and authority, and has taken all action necessary, to execute and deliver this Agreement and any and all other documents required or permitted to be executed or delivered by it in connection with this Agreement and to fulfill its obligations under, and to consummate the transactions contemplated by this Agreement, and no governmental authorizations or other authorizations are required in connection therewith; and

(b)     None of the claims being released have been assigned or transferred to any other person;

(c)     This Agreement constitutes the legal, valid and binding obligation of Southern  enforceable in accordance with its terms.

(d)     F Street retains exclusive ownership and control of any and all claims against Mario Castro and any other former customers of F Street with unpaid accounts for invoices prior to December 1, 1999.

# VIII.
## MISCELLANEOUS

All the Settling Parties additionally agree, acknowledge and warrant as follow:

(a)   **Consideration.**  This Agreement expresses a full and complete receipt, release, compromise and settlement of all liabilities and claims that the Settling Parties asserted against any released person or might have been asserted against any released person, whether known or unknown, arising from the allegations made or that could have been made in Lawsuit, regardless of the adequacy of the consideration given.  The mutual consideration the Settling Parties have given to each other shall not operate as an admission of liability on any Settling Party's part or as an estoppel, waiver, or bar with respect to any claims that the Settling Parties to this Agreement may have against any person not released herein.

(b)   **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall constitute one and the same document.

(c)   **No Duress.**  The Settling Parties represent that they have read this Agreement and understand the nature and effect of this Agreement and acknowledge that they have executed this Agreement with advice of counsel, without any duress or coercion.  The Settling Parties also understand that if any facts concerning the claims released in this Agreement should be found other than or different from the facts now believed to be true, this Agreement shall remain in full force and effect, notwithstanding.

(d)   **Full Integration.**  This Agreement represents the entire agreement between the Settling Parties and supersedes all prior understandings and agreements, if any, except as specifically set forth elsewhere in this Agreement.  This Agreement may be amended only by a writing signed by all of the Settling Parties.  **THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES RELATING TO THIS AGREEMENT.**

(e)   **Interpretation.**  This Agreement shall be deemed for all purposes to have been prepared by the joint efforts of the Settling Parties and shall not be construed against any one party.

(f)   **Texas Law.**  This Agreement shall be governed by the internal laws of the State of Texas without regard to principles of conflicts of law.

(g)   **Venue.**  Venue of any dispute arising under the terms of this Agreement will lie exclusively in the United States District Court for the Southern District of Texas, Brownsville Division.

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 6

788309.3/SP2/75935/0208/041803

(h)    **Notices.**  All notices and other communications required or permitted hereunder shall be in writing and, unless otherwise provided in this Agreement, shall be deemed to have been duly given when delivered in person or by mail or when dispatched by facsimile transfer  to the addressee at the address specified below, or such other address as any party from time to time may designate by like notice:

If to F Street:

Doug Purl, President
F Street Investments, Inc.
720 South F Street
Harlingen, Texas 78550

and

Nathaniel Peter Holzer
JORDAN, HYDEN, WOMBLE & CULBRETH, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone (361) 884-5678
Telecopier  (361) 888-5555

If to Southern:

Alex Madrazo
Dean Foods Company
2515 McKinney Aveune, Suite 1200
Dallas Texas, 75201

and

Jerry L. Beane
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, TX  75202
Telephone:  (214) 651-4300
Telecopier:  (214) 651-4330

(i)    **Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

(j)    **Survival and Severability**.  All representations, promises, covenants, and warranties contained herein shall survive the execution and delivery of this Agreement and the execution and delivery of any other document or instrument referred to herein. If any term or provision of this Agreement is found by a court of competent jurisdiction to be illegal or unenforceable for any reason, such term or provision may be severed from

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE  - Page 7

the remaining portions of this Agreement, and the remaining Agreement shall be binding and enforceable.

(k)    **Reasonable Cooperation**  In addition to the acts recited in this Agreement, the Parties agree to perform or cause to be performed, on the Effective Date or reasonably thereafter, any and all such further acts as may be reasonably necessary to consummate the provisions contemplated herein.

(l)    **Amendments**.  No amendment or waiver of any provision of this Agreement nor consent to any departure therefrom shall in any event be effective unless the same shall be in writing and signed by all parties hereto.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement to be effective as of the Effective Date.

F STREET INVESTMENTS, INC.

By: Doug Purl
Its: President

SOUTHERN FOODS GROUP, L.P.
**by its General Partner, SFG Management Limited Liability Company**
By: Patrick K Ford
Its:  CFO/VP, Dean Dairy Group

DEAN FOODS COMPANY f/k/a SUIZA FOODS CORPORATION

By: Alex Madrazo
Its:  VP

<u>COMPROMISE SETTLEMENT AGREEMENT AND RELEASE - Page 8</u>

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | |
| | § | |
| v. | § | CIVIL ACTION B-02-001 |
| | § | |
| SOUTHERN FOODS GROUP, L.P. | § | |
| AND SUIZA FOODS CORPORATION | § | |

## AGREED ORDER OF DISMISSAL WITH PREJUDICE

Plaintiff F Street Investments , Inc., a Texas Corporation f/k/a Hygeia Dairy

Company ("Plaintiff") and Defendants Southern Foods Group., L.P. and Suiza Foods

Corporation (now Dean Foods Company) (collectively, "Defendants") have announced to

the Court that they have resolved all claims, counterclaims, defenses and causes of action

between and among them.  Accordingly, Plaintiff and Defendants desire and have

requested the dismissal with prejudice of all claims, counterclaims, defenses and causes

of action which were alleged by Plaintiff and Defendants in the above-styled cause of

action.  The Court has considered such request and finds that it is well taken and should

be granted.

IT IS THEREFORE ORDERED that all claims, counterclaims, defenses and

causes of action which were alleged by Plaintiff and Defendants in the above-styled

cause of action are hereby DISMISSED WITH PREJUDICE to the refiling of the same.

It is furthered ORDERED that costs of Court shall be taxed against the party incurring

the same.

SIGNED this _____ day of _____, 2003.


_____
HILDA TAGLE
UNITED STATES DISTRICT JUDGE

**AGREED AS TO FORM AND SUBSTANCE:**

_____
NATHANIEL PETER HOLZER
State Bar No. 00793971
JORDAN, HYDEN, WOMBLE &
CULBRETH, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 888-555

**ATTORNEYS FOR PLAINTIFF**

_____
JERRY L. BEANE
State Bar No. 01966000
KAY LYNN BRUMBAUGH
State Bar No. 00785152
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202
Telephone: (214) 651-4300
Telecopier: (214) 651-4330

**ATTORNEYS FOR DEFENDANTS**

2



THIS CHECK IS PRINTED ON CHEMICAL REACTIVE PAPER WHICH CONTAINS A WATERMARK - HOLD UP TO A LIGHT TO VIEW

**Oak Farms Dairy**
3114 S Haskell
Dallas, TX 75223

| DATE | CHECK # |
|------|---------|
| 04/30/03 | 01193946 |

VOID AFTER 6 MONTHS

Amount
$***275,000.00

PAY  TWO HUNDRED SEVENTY-FIVE THOUSAND AND 00/100******************************

PAY
TO THE
ORDER
OF

F STREET INVESTMENTS, INC
720   SOUTH F STREET
HARLINGEN TX 78550

Wachovia Bank, N.A.
Greenville, South Carolina
In Cooperation with & Payable if Desired at
Wells Fargo Bank, N.A.
475809321X

Checks Greater Than $50,000 Must Be Manually Countersigned

⑈01193946⑈ ⑆053200019⑆    540507613⑈