2/

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 4 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| F STREET INVESTMENTS, INC. §<br>A TEXAS CORPORATION F/K/A §<br>HYGEIA DAIRY COMPANY §<br>§<br>v.                                §<br>§<br>SOUTHERN FOODS GROUP, L.P. AND §<br>SUIZA FOODS CORPORATION §| Civil Action B-02-001 |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO SET ASIDE SETTLEMENT AGREEMENT

Defendants Southern Foods Group, L.P. ("Southern Foods") and Suiza Foods
Corporation (now Dean Foods Company, "Dean") file this Reply Brief in Support of
Defendants' Motion to Set Aside Settlement Agreement. For the reasons stated below,
defendants' motion should be granted.

### A.    This Court Has Jurisdiction Over this Matter

Rather than directly addressing the substantive issues at the outset, F Street
instead begins by challenging the Court's jurisdiction. This challenge is ironic given that
F Street agreed to this Court's authority to resolve such disputes in the very settlement
agreement it seeks to enforce.[1] Despite plaintiff's assertion to the contrary, this Court
has jurisdiction over this matter. F Street's response incorrectly construes *Kokkonen v.
Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994). The Order dismissing the
case ("Dismissal Order") specifically states that the Court retains jurisdiction over any
settlement that may exist and specifically cites to *Kokkonen. Kokkonen* stands for the

---

[1] Paragraph VIII(g) of the settlement states that "Venue of any dispute arising under the terms of this
Agreement will lie exclusively in the United States District Court for the Southern District of Texas,
Brownsville Division." *See* Exhibit 2(C) to Defendants' Motion to Set Aside Settlement Agreement and
Supporting Brief.

REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE SETTLEMENT AGREEMENT – Page 1
802368 2/SP2/75935/0208/080103

proposition that a court may explicitly retain jurisdiction over a case after dismissal where a dispute later arises regarding a settlement agreement which caused the dismissal of the underlying case. *Id.* The case before this Court is precisely the type of situation envisioned in *Kokkonen.*

The purpose for ancillary jurisdiction is "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379-380. A dismissal based on an unenforceable settlement agreement necessarily affects the conduct of federal court business as the case is unfinished.

It would be illogical to argue that a court could retain jurisdiction over the enforcement of a settlement agreement without being able to review a challenge as to the enforceability of the settlement agreement. Such an argument flies in the face of the rationale for ancillary jurisdiction set forth in *Kokkonen.* Carried to its logical conclusion, F Street's argument could result in one party to a settlement going back to the federal court that retained jurisdiction over the matter to seek enforcement of the settlement agreement, while the other party is forced simultaneously to go to state court or another federal court to plead the unenforceability of the same settlement agreement. Such a situation would handicap the purpose of ancillary jurisdiction and would not promote judicial economy.

Regardless of the parties' differing interpretations of *Kokkonen*, it is significant that F Street drafted a provision in the settlement agreement that venue of any dispute arising under the settlement agreement would lie exclusively in the United States

District Court for the Southern District of Texas, Brownsville Division.   Certainly it is likely that a separately filed case by F Street in the Brownsville Division would be ultimately transferred back to this same Court as a "related case" even if the random assignment of the case designated a different court.   F Street's position regarding jurisdiction is without merit.

### B.    Mutual Mistake

It is undisputed that Defendants did not have knowledge of the Order granting, in part, Defendants' Motion for Summary Judgment ("Summary Judgment Order") either at the time that Defendants accepted F Street's settlement offer, negotiated the terms of the settlement agreement, executed the settlement agreement or delivered the settlement check to Plaintiff.[2]   Instead, F Street argues that the settlement agreement should not be rescinded due to Defendants' assumption of risk.   For the reasons set out below, Defendants have not assumed the risk of the error that occurred here and are entitled to a rescission of the settlement agreement.

### 1.    Defendants Did Not Assume the Risk of Clerk Error

Mutual mistake is an equitable doctrine, and this case is ripe for application of this doctrine.   F Street relies upon the theory of conscious ignorance to avoid setting aside the settlement agreement; however, conscious ignorance contemplates a situation where the parties have considered an issue and knowingly proceed in spite of

---

[2] While the affidavit of Peter Holzer filed in support of F Street's response to the motion to set aside the settlement agreement does not state when or under what circumstances F Street learned of the Order, Mr. Holzer swears that he had no knowledge of the Summary Judgment Order when Defendants accepted F Street's settlement offer.

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE SETTLEMENT AGREEMENT – Page 3**
802368 2/SP2/75935/0208/080103

the unknown fact.[3]  The harm or adverse action in this case was the clerk's error in improperly inputting the document number for the Summary Judgment Order and the resulting untimely notice of the grant of summary judgment.  Defendants did not assume the risk of such clerical error which delayed notice of the Summary Judgment Order to Defendants until well after the parties had finalized and executed the settlement agreement.[4]  This is not an error which logic or equity dictates should be charged against Defendants.

The case relied upon by F Street distinguishes conscious ignorance cases from those instances in which the subject of uncertainty has not been a concern of the parties.  According to *Harbor Ins. Co. v. Stokes*, 45 F. 3d 499, 503 (D.C. Cir. 1995), "In order for a mistake to have legal significance and to constitute a basis for invalidating a compromise, it must be based upon the parties' unconscious ignorance; it must not relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest."  The *Harbor* court further added that ". . . where the subject of uncertainty has not been a concern of the parties, i.e. **where the post-contract discovery comes out of left field, an inference of intentional allocation is questionable.**"  *Id.* at 502 (emphasis added).

---

[3] F Street proceeded to negotiate and finalize the settlement documents with full knowledge of the Summary Judgment Order.  The behavior of F Street's counsel on the day that Defendants communicated their acceptance of F Street's proposal regarding monetary amount for the accounts receivable claim is telling.  As explained in Defendants' initial motion, F Street's counsel initially requested that Defendants' counsel prepare the settlement documents, but only a few hours after that request was made, F Street's counsel provided a draft settlement agreement to Defendants' counsel, noting that his clients had not reviewed the documents.  *See* Defs.' Mot. to Set Aside at 4 & Ex. 2 at ¶ 6 and attached Ex. 2(A).

[4] The settlement agreement was not finalized and fully executed until April 30, 2003 (four weeks after the Summary Judgment Order was signed).

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE SETTLEMENT AGREEMENT – Page 4**

The error in this case certainly "came out of left field." The parties did not contemplate a situation in which a clerical error would result in the parties' (or at least one party) not receiving notice of summary judgment until six weeks after it was entered. Thus, F Street's argument, based on the alleged allocation of a risk of the Court's ruling upon the summary judgment motion – as opposed to the risk of the clerical error that occurred here—is not applicable. Rather, this situation is akin to a latent injury which the *Harbor Ins.* court distinguished from conscious ignorance. *Id.* at 502 (citing *Finch v. Carlton*, 524 P.2d 898 (1974) (excusing victim of auto accident from release he signed when he thought he had suffered no personal injury and settled for cost of repairing his car, where latent injuries not contemplated by the parties later appear)).

F Street's reliance upon *Hillcrest Realty Co. v. Gottlieb*, 234 A.D.2d 270 (N.Y. App. Div. 1996) is also misplaced. *Hillcrest* involved a situation in which the parties reached a tentative agreement and then the appellate decision was handed down a few months later. The *Hillcrest* court reasoned that the parties bore the risk of who would prevail on appeal. Here, the Order had been signed days before the parties reached a tentative agreement on the account receivables claim. Further, neither case relied upon by F Street involved instances in which one party had full knowledge of the issuance of the relevant court ruling on the day that the acceptance of the monetary aspect of the settlement was communicated.

3.   F Street's Position Would Inhibit Judicial Economy and Efficiency

F Street argues that the Defendants could have ascertained whether the Court had ruled on the motion for summary judgment during settlement negotiations. Under F

Street's theory, Defendants should have the burden of inquiring daily with the clerk's office as to the status of every pending motion for every case. If such was standard practice, the clerk's office would be overwhelmed and bombarded with constant phone calls from attorneys concerned that they may not receive timely notice of court rulings. Parties should be able to rely upon the clerk's office to timely provide notice to parties. Further, the cost for daily (or even weekly) inquiry would be extremely costly for clients.[5]

4.    The Delay in Providing Notice Prejudiced Defendants

F Street suggests that delay on the part of Defendants in seeking to set aside the settlement agreement might be a justification for denying the motion to set aside. F Street is wrong. Defendants began investigating the reason for the delayed notice of the Summary Judgment Order immediately upon receipt of notice. Defendants waited for all the facts before determining how to proceed. F Street argues that an eight-week delay in filing the motion in question supports the argument that the delay in receipt of notice had no serious adverse consequences to Defendants.[6]    This position is untenable. Had Defendants known about the Summary Judgment Order, Defendants would not have accepted F Street's offer to settle the then "undisputed" claims for accounts receivables in the amount of $200,000.

F Street relies upon *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland [11[th] Dist.] 2003, writ requested) for its ratification argument; however, the *Barker* case is distinguishable. *Barker* involved a situation in which the appellant delayed an effort to

---

[5] F Street relies upon Rule 77(d) of the Federal Rules of Civil Procedure to support its position that a party lacks any recourse for a clerk's failure to give timely notice; however, F Street even admits in its response that this provision is not applicable to the instant case.

[6] Notably, Defendants had already tendered the settlement check by the time they learned of the Summary Judgment Order.

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO SET ASIDE SETTLEMENT AGREEMENT** – Page 6
802368.2/SP2/75935/0208/080103

rescind a release for over <u>two years</u> after he realized that there was a mistake of fact. Additionally, the appellant retained possession of the settlement funds during this two-year period and continued to seek the enforcement of the settlement. Under those circumstances, the *Baker* court held that the appellant had taken action so contrary to the request for rescission that the appellant had, in fact, ratified the release and settlement. Defendants have not taken any position contrary to their request to set aside the settlement agreement. Further, Defendants had already tendered settlement funds when they learned of the Summary Judgment Order. Defendants have not ratified the settlement agreement.

> 5.    A Release is Voidable for Mutual Mistake

F Street relies upon the release contained in the settlement agreement as a basis for avoiding an order setting aside the agreement; however, even releases (treated like any other contract) may be voidable for mutual mistake. According to Restatement (Second) of Contracts § 152, cmt. f, illus. 12 (1981),

> A has a claim against B for B's admitted negligence, which appears to have caused damage to A's automobile in an amount fairly valued at $600. In consideration of B's payment of $600, A executes a release of "all claims for injury to person or property" that he may have against B. Both A and B believe that A has suffered damage to property only, but A later discovers that he has also suffered personal injuries in the extent of $20,000. *The release is voidable by A*. (emphasis added)

The language in the release in the settlement agreement, therefore, does not prevent the Court from voiding the settlement agreement. More importantly, this language was drafted by F Street's counsel at a time that <u>he</u> knew of the Summary Judgment Order and Defendants' counsel did not. It is disingenuous, at best, for F Street to now rely on

the language of the release.  For the reasons set forth in this Reply, the settlement agreement should be set aside.

## CONCLUSION

For the reasons stated above, Defendants request that the Court exercise its equitable powers and grant Defendants' Motion to Set Aside Settlement Agreement and enter an Order that: (1) sets aside the settlement agreement; (2) amends the Court's order of dismissal consistent with the summary judgment order; (3) permits Defendants thirty days in which to file a second motion for summary judgment directed at F Street's antitrust claim; and (4) orders F Street to return to Defendants the settlement funds in the amount of $275,000 within 10 days of the date of this Order.

DATED: August 4, 2003.

Respectfully submitted,

*Jerry L. Beane* by KLB

JERRY L. BEANE
Attorney-in-Charge
State Bar No. 01966000
Southern Dist. Bar No. 8993
KAY LYNN BRUMBAUGH
State Bar No. 00785152
Southern Dist. Bar No. 21341
STRASBURGER & PRICE, L.L.P.
901 Main Street, Suite 4300
Dallas, Texas 75202
(214) 651-4300
(214) 651-4330 (Telecopier)

AND

EDUARDO R. RODRIGUEZ
State Bar No. 17144000
Southern Dist. Bar No. 1944
ALISON KENNAMER
State Bar No. 112804000
Southern Dist. Bar No. 12023
RODRIGUEZ, COLVIN & CHANEY
1201 East Van Buren
Brownsville, Texas 78522
(956) 542-7441
(956) 541-2170 (Telecopier)

**ATTORNEYS FOR DEFENDANTS
SOUTHERN FOODS GROUP, L.P.
AND SUIZA FOODS CORPORATION
(NOW DEAN FOODS COMPANY)**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record on this the 4th day of August, 2003 via U.S. Mail.

KAY LYNN BRUMBAUGH