

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 3 0 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| F STREET INVESTMENTS, INC. F/K/A § | | |
| HYGEIA DAIRY COMPANY, § | | |
| Plaintiff § | | |
| § | | |
| v. § | CIVIL CASE NO. B-02-001 | |
| § | | |
| DEAN FOODS, COMPANY F/K/A/ § | | |
| SUIZA FOODS CORPORATION, AND § | | |
| SOUTHERN FOODS GROUP, L.P. § | | |
| Defendants. | | |

## ORDER

BE IT REMEMBERED, that on March 29, 2004, the Court **DENIED** Defendants' Motion to Set Aside Settlement Agreement [Dkt. No. 17].

### I. Procedural and Factual Background

This case involved the alleged violations of federal and state antitrust laws, breach of various contracts, and conversion under state tort law. On March 31, 2003, this Court signed and issued a partial summary judgment order. The Court denied Plaintiff's motion for summary judgment and granted Defendants' motion for summary judgment on a breach of contract claim concerning an Asset Purchase Agreement because the Court found that Plaintiff did not present competent summary judgment evidence that Defendants failed to remit $230,317.43 to F Street. Further, the Court denied Plaintiff's motion for summary judgment and granted Defendants' motion for summary judgment on a breach of contract claim because Plaintiff failed to demonstrate that Defendants breached their duties under an Escrow Agreement. The Court denied Plaintiff's motion for summary judgment and granted Defendants' motion for summary judgment on a breach of contract claim concerning a Christmas party and on a conversion claim concerning Defendants' alleged failure to return ice cream dollies. Finally, the Court denied without prejudice Defendants' Motion for Summary Judgment on Plaintiff's antitrust claims, and allowed the parties time

to reurge summary judgment motions on these claims no later than April 15, 2003, which corresponded with the second of two dispositive motion deadlines contained in the scheduling order.

On April 3, 2003, Defendants orally accepted Plaintiff's demands for settlement. See Defs' Motion, at p. 4; Pl's Response, at p. 2. Defendants agreed to pay Plaintiff $275,000. Defendants assert that $200,000 of this settlement is attributable to the accounts receivable claim. On its face, the settlement agreement does not specify how much of the total settlement is attributable to Plaintiff's accounts receivable claim versus the antitrust claims. See Def's Motion, at p. 4, Ex. 2(C). On April 30, 2003, the settlement documents were finalized and fully executed by all parties. On May 9, 2003, this Court signed an order of dismissal of all claims. As the antitrust claims remained outstanding, the Court believed the stipulation of dismissal pertained to these claims, and thus, the Court was not alerted to any abnormalities in the case. In its dismissal order, the Court specifically retained jurisdiction over any settlement that may exist, and it cited Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S.Ct. 1673 (1994), as evidence of such. On May 12, 2003, Defense counsel received the summary judgment order. See Defs' Motion, at p. 5. It is undisputed that at the time the parties initially agreed to settlement of the claims on April 3, no parties or counsel knew the Court had recently issued a summary judgment decision. See Pl's Motion, Ex. 1; Defs' Motion, at p. 5, Ex. 1, ¶ 7. Defendants filed the present motion to set aside settlement on July 7, 2003.

The Court has conducted its own investigation, and Defendants are correct in their assertion that an error in the District Court Clerk's office caused a six-week delay between the Court's issuance of the summary judgment order and the Defendants' receipt of this order. In short, the summary judgment order was originally assigned a docket number already assigned to a previous filing, the Defendants' reply brief to the Plaintiff's motion for summary judgment. As a result, on April 1, 2003, the Clerk's office did not fax or mail the Court's summary judgment order, but instead sent the image that was first assigned the docket number. Upon discovery of the error, the Clerk's office assigned the correct docket number to the summary judgment order and faxed and mailed the order on May 12, 2003.

## II. Arguments of the Parties

Defendants argue the Court should set aside the settlement agreement because the parties did not know the Court had already issued an order granting in many respects Defendants' motion for summary judgment. See Defs' Motion to Set Aside, at p. 1 [Dkt. No. 17]. Defendants argue this mutual mistake of material fact warrants the Court's action in setting aside the settlement agreement. More specifically, the Defendants inform the Court that as part of the settlement agreement, they agreed to pay $200,000.00 to dispose of F Street's accounts receivable claim, which claim in reality had already been ruled upon in Defendants' favor in the Court's March 31 order.

Plaintiff makes several counter arguments. Most notably, it argues that at the time Defendants orally accepted Plaintiff's demand to settle the case, no one knew the Court had issued a summary judgment decision. This settlement, Plaintiff argues, is valid and binding and should not be rescinded on the basis of a mutual mistake. See Pl's Response, at p. 5. Further, Plaintiff argues Defendants consciously assumed the risks associated with settling because they knowingly proceeded to settle in light of certain risks --in this case, the risk that the Court had already ruled on the summary judgment motion in Defendant's favor.

Defendants state they never assumed the risk that the clerk's office would err in notifying the parties and thus delay receipt of the Court's order by six weeks. Defendants quote, "'[i]n order for a mistake to have legal significance and to constitute a basis for invalidating a compromise, it must be based upon the parties' unconscious ignorance; it must not relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest.'" Defs' Reply Brief, at p. 4 [Dkt. No. 21] (citing Harbor Ins. Co. v. Stokes, 45 F.3d 499, 503 (D.C. Cir. 1995)). Defendants argue the clerk's error caused Defendants to enter into a settlement they otherwise would not have agreed to, and they never assumed the risk of this error; the error "came out of left field." Id. at p. 5 (quoting Harbor Ins., 45 F.3d at 502).[1]

---

[1] Although Defendants raise the issue that Plaintiff had knowledge of the Court's ruling while the parties were finalizing and executing the agreement, Defendants do not allege that Plaintiff fraudulently failed to notify Defendants of the Court's ruling.

## III. Legal Analysis
### A. Jurisdiction

The Court begins its analysis by finding that pursuant to Kokkonen v. Guardian Life Ins. Co. of America, the Court has jurisdiction to resolve the dispute currently before the Court. 511 U.S. 375, 380-81 (1994). The Court reserved jurisdiction in its order of dismissal entered on May 9, 2003, when it stated, "[t]he Court retains jurisdiction to enforce any settlement that may exist." As a result, the Court also retains jurisdiction over the settlement contract, which naturally and inherently involves jurisdiction to enforce a settlement and to set aside, vacate or nullify a settlement. Plaintiff has provided the Court with no authority that would indicate it only has ancillary jurisdiction to enforce, but not to set aside a settlement agreement. Simply stated, by citing Kokkonen in its order of dismissal, the Court explicitly retained jurisdiction over the settlement as a contract and, therefore, all disputes in relation to that contract.

### B. Legal Framework and Analysis

Under Texas law and the doctrine of mutual mistake, "an agreement may be avoided where the parties contracted under a misconception or mistake of material fact." Barker v. Roelke, 105 S.W.3d 75, 84 (Tex. App. --Eastland 2003, no pet.) (citation omitted). "The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-upon exchange." Id. The Restatement (Second) of Contracts further states: "(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154. (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise." See RESTATEMENT (SECOND) OF CONTRACTS: When Mistake of Both Parties Makes a Contract Voidable § 152 (1981).

Due to the importance of finality in reaching agreements, the doctrine of mutual mistake is not regularly available to protect a party who is unhappy with a bargain after a contract has been formed. See Williams v. Glash, 789 S.W.2d 261, 264-65 (Tex. 1990).

For example, a party's inability to predict future facts or error in predicting such facts is not generally the kind of mistake that absolves a party of performance on the contract. See Green v. Morris, 43 S.W.3d 604, 607 (Tex. App. --Waco 2001, no pet.).

As mentioned above, a party will not be allowed to avoid a contract on the basis of mutual mistake if the harmed party assumed the risk associated with such an agreement. The Restatement (Second) of Contracts states: "A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." RESTATEMENT (SECOND) OF CONTRACTS: When a Party Bears the Risk of a Mistake § 154 (1981). When a party, however, may understand that his knowledge of all the facts was limited at the time he entered into a contract, and he "undert[akes] to perform in the face of that awareness, he bears the risk of the mistake." In this type of situation, it is sometimes referred to as "conscious ignorance" instead of mistake. Id. § 154 cmt. c.

With the above concepts in mind, few courts have addressed a dilemma similar to the one before this Court now --that is, whether a settlement agreement should be avoided or set aside when the parties entered an agreement after the Court had issued a ruling on a relevant motion, but before the parties received notice of the ruling. The Court of Appeals for the District of Columbia Circuit refused to set aside a settlement under similar circumstances. In Harbor Ins. Co. v. Stokes, the parties entered into a settlement agreement on a Friday afternoon. 45 F.3d 499, 500 (D.C. Cir. 1995). On Monday morning, the parties discovered the Court had previously ruled in the Plaintiff's favor on Thursday, the day before the parties settled. See id. As in the case before this Court now, the prevailing party in Harbor Ins. sought to avoid the settlement agreement. The D.C. Circuit upheld the settlement, holding that "[b]ecause Stokes and Harbor acted in conscious ignorance of the uncertainties about both the outcome of the case and its timing, [the Court] . . . [will] affirm the judgment of the district court." Id.

Certainly, there are some distinctions between this case and the circumstances in Harbor Insurance. Namely, the case before this Court now is complicated by the Clerk's noticing error. Additionally, it appears that after the initial agreement to settle was formed, the Plaintiff received the Court's summary judgment ruling while the Defendants still had not. Defendants do not argue that an agreement was not formed until April 30, 2003, the day the documents were finalized and fully executed by all parties. Rather, Defendants state that throughout the process of finalizing the agreement, memorializing it in writing, and executing the agreement, Plaintiff became aware of the ruling and Defendants did not until May 12, 2003, almost two weeks after the final settlement was signed.

Defendants attempt to distinguish Harbor Insurance from this case by stating that the parties in Harbor Insurance had concluded their settlement agreement before any party was aware of the Court's ruling. Defendants, however, have not presented the Court with any authority or arguments that their acceptance of the settlement proposal on April 3, 2003, before any party knew of the Court's ruling, did not form a valid contract. The Court agrees with Plaintiff that oral settlements can be binding and enforceable. See Strange v. Gulf & South Am. Steamship Co., 495 F.2d 1235, 1236 (5th Cir. 1974). Indeed, both parties' assertions in affidavits suggest the settlement agreement was simply memorialized in writing and executed in the weeks that followed the April 3 acceptance. As a result, it appears that on April 3, 2003, a settlement agreement was formed, and at the time Defendants accepted the terms of the settlement, neither party was aware of the Court's ruling.

As discussed above, the doctrine of mutual mistake does not apply when a party bears the risk of mistake. The D.C. Circuit noted in Harbor Insurance that every time parties enter a contract, they act with incomplete information, assess the risks involved in settling versus continuing with litigation to finality, and draw certain conclusions about the "desirability of acquiring (and waiting for) additional information." Harbor Ins., 45 F.3d at 502. "'In order for a mistake to have legal significance and to constitute a basis for invalidating a compromise, it must be based upon the parties' unconscious ignorance; it

must not relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest.'" Id. (citations omitted). Defendants were aware of and accepted the risk that the Court could rule at any time on its pending motion for summary judgment. Additionally, although the Court regrets the error in the Clerk's office, this error alone does not change the above analysis or the risk accepted by the parties. Indeed, any time the Court issues a ruling, there is a normal delay before the parties receive notice, whether that delay is one day, several days, or a number of weeks. The Harbor Insurance case is just such an example where the Court issued its ruling on a Thursday, yet the parties did not receive notice via mail until the following Monday. It is incumbent upon parties to make sure during that time that any pending motions that are material to the settlement have not been ruled on.

The plaintiff argued unpersuasively in Harbor Insurance that "although he was consciously ignorant of the *range* of possible times when judgment might issue, he never consciously entertained the thought that the Court had *already* acted." Id. at 503. Analogously, Defendants argue in this case that they assumed the risk that the Court could rule on its pending motion at any time, but they did not assume the risk of Clerk error. See Defendants' Reply, at p. 3. As discussed above, however, it was not the Clerks' error that altered their risk assessment, nor did the Clerk's error *cause* them to enter a settlement agreement they otherwise would have rejected. Rather, it was the risk of the Court's judgment, which could be issued at any time, that the parties assumed. Further, when the Defendants accepted the settlement, they were not relying on the Clerk's office in assuming their risk. Had the clerk's office affirmatively represented to the Defendants that the Court had not ruled on the summary judgment motion when in fact the Court had ruled in Defendants' favor, then Defendants may be able to argue that they did not consciously assume any risk. That is not the case here, and "[e]quity will not relieve a party of its obligations under a contract merely because subsequently, with benefit of hindsight, it appears to have been a bad bargain." Hillcrest Realty Co. v. Gottlieb, 234 A.D.2d 270, 271

(N.Y. App. Div. 1996).[2]

## IV. Conclusion

The Court **DENIES** Defendants' Motion to Set Aside Settlement Agreement, and consequently **DENIES** all other requested relief in that motion [Dkt. No. 17].

DONE this 29th day of March, 2004, at Brownsville, Texas.

_____
Hilda G. Tagle
United States District Court Judge

---

[2] Like the Court in Harbor Insurance, this Court finds the holding in Farhat v. Rassey, 295 Mich. 349, 294 N.W. 707 (1940) to be unpersuasive because when settling, the parties assume the risk of both the outcome of the lawsuit on the merits as well as the timing of the Court's rulings. See Harbor Ins., 45 F.3d at 503.